PEOPLE v WATERSTONE

Docket Nos. 303268 and 303703. Submitted October 5, 2011, at Detroit. Decided April 10, 2012, at 9:05 a.m.

The Attorney General charged Mary M. Waterstone and three others in the 36th District Court with felonies for alleged misconduct arising out of a criminal prosecution in the Wayne Circuit Court in which Waterstone (hereafter defendant) sat as a circuit court judge. The district court, with regard to the counts that related to defendant exclusively (counts 12, 13, 14, and 15), which alleged that defendant violated MCL 750.505 when she willfully neglected her judicial duties by failing to disclose certain ex parte communications and perjured testimony, bound defendant over to the Wayne Circuit Court on all four counts. The circuit court, Timothy M. Kenny, J., granted defendant's motion to quash counts 12, 13, and 14 and denied defendant's motion to quash count 15. The Attorney General appealed by leave granted the part of the order quashing counts 12, 13, and 14 (Docket No. 303268) and defendant appealed by delayed application for leave to appeal granted the part of the order denying her motion to quash count 15 (Docket No. 303703). The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

MCL 750.505 provides for criminal penalties and punishment when a person commits an offense that was indictable at the common law, such as misconduct in office, absent a statutory provision that expressly punishes the charged offense. MCL 750.478, a misdemeanor statute, is a statute that expressly provides for the punishment of misconduct in office with respect to misconduct that entails willful neglect to perform a legal duty (nonfeasance), which is the type of misconduct set forth in the particular charges brought against defendant. The elements of the charged offense are the same elements of a statutory offense, MCL 750.478. Therefore, under the plain and unambiguous language in MCL 750.505, which was the sole statute relied on by the Attorney General in regard to counts 12, 13, 14, and 15, MCL 750.505 cannot be invoked as a basis to try and convict defendant. Defendant was entitled to dismissal of counts 12, 13, 14, and 15 without prejudice. The circuit court's ruling quashing counts 12,

13, and 14 is affirmed. The circuit court's ruling allowing count 15 to proceed to trial is reversed. The matter is remanded to the circuit court for the entry of an order fully dismissing the charges against defendant without prejudice.

1. At common law, misconduct in office was defined as corrupt behavior by an officer in the exercise of the duties of his or her office or while acting under color of his or her office. An officer could be convicted of misconduct in office (1) for committing any act that is itself wrongful (malfeasance), (2) for committing a lawful act in a wrongful manner (misfeasance), or (3) for failing to perform any act that the duties of the office require of the officer (nonfeasance).

2. An indictable common-law offense can be charged by the prosecution pursuant to MCL 750.505 unless punishment for that offense is otherwise expressly provided for by a statute. It is proper to dismiss a charge brought under MCL 750.505 if the charge sets forth all the elements of a statutory offense.

3. The crime of willful neglect of duty under MCL 750.478 is the same as the crime of misconduct in office under the common law in relation to a nonfeasance theory of prosecution. Defendant was charged with acts of nonfeasance, or failure to perform a legal duty. The Attorney General's case against defendant, prosecuted under MCL 750.505, actually sets forth all the elements of MCL 750.478, because defendant was charged with willfully neglecting her judicial duties.

4. MCL 750.478, which punishes the willful neglect of duty, necessarily encompasses the element of corrupt behavior. Corrupt behavior is also an element of misconduct in office committed through nonfeasance for purposes of MCL 750.505. There is no corrupt-behavior distinction between the two statutes. With respect to misconduct in office under a theory of nonfeasance, corrupt behavior or intent is the equivalent of willful neglect under MCL 750.478.

5. There is no relevant difference between corrupt behavior and willful neglect in the context of nonfeasance in relationship to a legal duty or obligation concerning nondiscretionary or ministerial acts.

6. MCL 750.478 addresses ministerial or nondiscretionary acts because it speaks of performing duties enjoined by law. The charges against defendant allege a failure to perform judicial duties that were nondiscretionary.

7. Willful neglect of duty and corrupt nonfeasance are effectively one and the same. If a public officer willfully neglected to perform a legal duty, the officer engaged in corruption or corrupt behavior.

8. The requisite intent for purposes of misconduct in office under MCL 750.505 is the intent to engage in corruption or corrupt behavior; a corrupt intent needs to be proven. Corrupt intent can be shown when there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of an office by an officer. The term "willful," with respect to MCL 750.478, encompasses a knowledge and purpose to commit a wrong (a bad purpose) while committing an intentional act of nonfeasance. Willful neglect of a duty required by law to be performed by an officer, i.e., deliberate forbearance, necessarily entails the intent to intentionally, knowingly, and purposely misbehave and engage in wrongful conduct. This intent is identical to the corrupt intent needed to establish misconduct in office under MCL 750.505. Therefore, there is no pertinent distinction between MCL 500.478 and MCL 500.505 in regard to the intent element.

9. Within the context of MCL 750.478, "neglect" means a failure to perform a legal duty, not negligence. A willful failure to perform does not encompass negligent conduct.

Affirmed in part, reversed in part, and remanded.

TALBOT, J., concurring in part and dissenting in part, stated that the majority's decision to remand with regard to counts 12, 13, and 14, which pertain to two ex parte communications and the failure to inform the underlying defendants of the perjured testimony, is not necessary because the charges cannot be sustained under either MCL 750.478 or MCL 750.505 unless defendant has breached or willfully neglected a recognized legal duty. No statutory basis exists to preclude any judge from engaging in ex parte communication; therefore, defendant's participation in ex parte communication cannot comprise the violation of a duty. The Code of Judicial Conduct sets forth parameters and guidelines for a judge's participation in ex parte communication as a standard to be applied, but the code does not impose a judicial duty. In the absence of a duty, participation in ex parte communication cannot comprise a public official's willful neglect to perform a legal duty. Because there was no legal duty, defendant's failure to disclose her participation cannot constitute a willful violation or constitute misconduct in office. The ex parte communication engaged in by defendant falls outside the behavior constrained by MCL 750.478 and MCL 750.505. Because defendant was already aware of the information contained in the ex parte communications, the underlying defendants were not prejudiced as a result of the ex parte communication. The Attorney General failed to identify any specific duty on the part of a judge to inform a defendant of perjured testimony. Absent the existence of a legal duty, any

allegation regarding breach of a duty or willful neglect of a duty cannot be sustained under either statute. Counts 12, 13, and 14 should be dismissed with prejudice. With regard to count 15, which charged defendant with misconduct in office for willfully neglecting her judicial duties by allowing perjured testimony to be heard by the jury, this count encompasses a clearly recognized legal duty, because the commission of perjury in court proceedings is prohibited by MCL 750.422 and the action required of a trial judge when perjury occurs is provided in MCL 750.426. A criminal conviction obtained through the knowing use of perjured testimony is violative of a defendant's due process rights under the Fourteenth Amendment. Because MCL 750.478 and MCL 750.505 both rely on the same duty for trial judges, the distinction between the felony of misconduct in office, MCL 750.505, and the misdemeanor of willful neglect of duty, MCL 750.478, rests on the existence of criminal intent. MCL 750.478 does not require a showing of criminal intent while MCL 750.505 does. MCL 750.478 does not constitute a separate codification of the offense of misconduct in office committed through nonfeasance and, therefore, does not preclude the instant charge in count 15 of misconduct in office based on nonfeasance under MCL 750.505. The trial court properly allowed count 15 to proceed to trial and correctly quashed counts 12, 13, and 14; however, such dismissal should have been with prejudice.

1. CRIMINAL LAW — PUBLIC OFFICERS — MISCONDUCT IN OFFICE — NONFEASANCE.

The statute regarding willful neglect of duty by a public officer expressly provides for the punishment of misconduct in office with respect to misconduct that entails willful neglect to perform a legal duty (nonfeasance) (MCL 750.478).

2. PUBLIC OFFICERS — MISCONDUCT IN OFFICE — COMMON-LAW OFFENSES.

Misconduct in office was defined under the common law as corrupt behavior by an officer in the exercise of the duties of his or her office or while acting under color of his or her office; an officer could be convicted for committing any act that is itself wrongful (malfeasance), for committing a lawful act in a wrongful manner (misfeasance), or for failing to perform any act that the duties of the office require of the officer (nonfeasance).

3. PUBLIC OFFICERS — WILLFUL NEGLECT OF DUTY — MISCONDUCT IN OFFICE — NONFEASANCE.

The crime of willful neglect of duty under MCL 750.478 is the same as the crime of misconduct in office under the common law in relation to a nonfeasance theory of prosecution.

4. PUBLIC OFFICERS — WILLFUL NEGLECT OF DUTY — MISCONDUCT IN OFFICE — CORRUPT BEHAVIOR — NONFEASANCE.

MCL 750.478, which punishes a public officer's willful neglect to perform a legal duty, necessarily encompasses the element of corrupt behavior, which is also an element of the common-law offense of misconduct in office committed through nonfeasance for purposes of a prosecution under MCL 750.505; there is no corrupt-behavior distinction between the two statutes.

5. PUBLIC OFFICERS — CORRUPT BEHAVIOR — WILLFUL NEGLECT — NONFEASANCE — MINISTERIAL ACTS.

There is no relevant difference between corrupt behavior and willful neglect in the context of nonfeasance in relationship to a legal duty or obligation concerning nondiscretionary or ministerial acts of a public officer.

6. PUBLIC OFFICERS — WILLFUL NEGLECT OF DUTY — CORRUPT NONFEASANCE.

Willful neglect of duty and corrupt nonfeasance are effectively the same; if a public officer willfully neglects to perform a legal duty the officer has engaged in corruption or corrupt behavior.

7. PUBLIC OFFICERS — MISCONDUCT IN OFFICE — INTENT — CORRUPT INTENT.

The requisite intent for a charge of misconduct in office under the common law is the intent to engage in corruption or corrupt behavior; corrupt intent can be shown when there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of a public office by an officer (MCL 750.505).

8. PUBLIC OFFICERS — WILLFUL NEGLECT OF DUTY — INTENT.

The term "willful" in the statute regarding willful neglect of duty by a public officer encompasses a knowledge and purpose to commit a wrong while committing an intentional act of nonfeasance; a willful neglect of a duty required by law to be performed by an officer, i.e., deliberate forbearance, necessarily entails the intent to intentionally, knowingly, and purposely misbehave and engage in wrongful conduct; this intent is identical to the corrupt intent needed to establish misconduct in office under the common law (MCL 750.478; MCL 750.505).

9. PUBLIC OFFICERS — WILLFUL NEGLECT OF DUTY — WORDS AND PHRASES — NEGLECT.

The term "neglect," within the context of the statute regarding willful neglect of duty by a public officer, means a failure to

perform a legal duty, not negligence; a willful failure to perform
does not encompass negligent conduct (MCL 750.478).

*Bill Schuette*, Attorney General, *John J. Bursch*,
Solicitor General, *Richard A. Bandstra*, Chief Legal
Counsel, and *Anica Letica*, Assistant Attorney General,
for the people.

*Gerald K. Evelyn, Juan A. Mateo,* and *Jay Y. Mandel*
for defendant.

Before: MURPHY, C.J., and TALBOT and MURRAY, JJ.

MURPHY, C.J. In these consolidated appeals, the
Michigan Attorney General (AG) charged defendant
with four counts of felony misconduct in office under
MCL 750.505 arising out of a criminal prosecution in
which defendant, sitting as a circuit court judge, is
alleged to have willfully neglected her judicial duties by
failing to disclose certain communications and perjured
testimony. MCL 750.505 provides for criminal penalties
and punishment when a person commits an offense that
was indictable at the common law, such as misconduct
in office, absent a statutory provision that expressly
punishes the charged offense. We find that MCL
750.478, a misdemeanor statute, constitutes a statute
that expressly provides for the punishment of miscon-
duct in office with respect to misconduct that entails
willful neglect to perform a legal duty (nonfeasance),
which is the type of misconduct set forth in the particu-
lar charges brought by the AG against defendant. The
elements of the charged offense are the same elements
of a statutory offense, MCL 750.478. Therefore, under
the plain and unambiguous language in MCL 750.505,
which is the sole statute relied on by the AG in regard
to the four counts at issue, MCL 750.505 cannot be
invoked as a basis to try and convict defendant. Defen-

dant is entitled to dismissal of the charges without prejudice. Accordingly, we affirm the circuit court's ruling quashing counts 12, 13, and 14 of the complaint, albeit for different reasons; however, we reverse the court's ruling allowing count 15 to proceed to trial.[1]

### I. FACTUAL AND PROCEDURAL HISTORY

The underlying criminal case presided over by defendant concerned drug charges brought by the Wayne County Prosecutor's Office against Alexander Aceval and Ricardo Pena. The facts in that prosecution with respect to Aceval's alleged criminal activities, along with the facts regarding our defendant's behavior on the bench, were set forth as follows in *People v Aceval*, 282 Mich App 379, 382-385; 764 NW2d 285 (2009):

> This matter arises out of an illegal drug transaction. On March 11, 2005, police officers Robert McArthur, Scott Rechtzigel, and others, acting on information obtained from Chad William Povish, a confidential informant (CI), were on surveillance at J Dubs bar in Riverview, Michigan. Povish previously told police officers that [Aceval] had offered him $5,000 to transport narcotics from Detroit to Chicago. That day, the officers observed [Aceval], Povish, and Bryan Hill enter the bar. [Aceval] arrived in his own vehicle, while Povish and Hill arrived in another. Eventually the three individuals left the bar and loaded two black duffel bags into the trunk of Povish's car. Povish and Hill then drove away, while [Aceval] drove away in his own vehicle. Subsequently, the officers stopped both vehicles and found packages of cocaine in the duffel bags located in the trunk of Povish's car. [Aceval] was subsequently arrested and charged with possession with intent to deliver 1,000 or more grams of cocaine, MCL 333.7401(2)(a)(*i*), and conspiracy to commit that offense, MCL 750.157a.

---

[1] Counts 12 through 15 were the only counts that pertained to defendant.

Before trial, [Aceval] moved for the production of the identity of the CI. During an evidentiary hearing on June 17, 2005, [Aceval] requested that the trial court, Judge Mary Waterstone, conduct an in camera interview of McArthur, the officer in charge of the investigation. The judge agreed, and in the conference it was revealed that McArthur and Rechtzigel knew that Povish was the CI. Further, the officer told the trial court that Povish was paid $100 for his services, plus "he was going to get ten percent, whatever we got." The conference was sealed and the trial court denied [Aceval's] motion.

Subsequently, [Aceval] filed a motion to suppress certain evidence. During a hearing on September 6, 2005, Rechtzigel lied when he testified, in response to defense counsel's questioning, that he had never had any contact with Povish before March 11, 2005. The prosecutor did not object. On September 8, 2005, in another sealed in camera conference between the judge and the prosecutor, the prosecutor admitted that she knew that Rechtzigel had knowingly committed perjury but stated that she "let the perjury happen" because "I thought an objection would telegraph who the CI is." In response, the judge stated that she thought "it was appropriate for [the witness] to do that." Further, the court added, "I think the CI is in grave danger . . . . I'm very concerned about his identity being found out."

The matter went to trial on September 12, 2005. At trial, the prosecutor and the judge continued their efforts to protect the CI's identity. Povish testified that he had never met Rechtzigel or McArthur before they stopped his vehicle on the day that he received the duffel bags and that neither had offered him a deal of any kind. He further testified that he did not know what was in the duffel bags and that, until trial, he believed that he could be charged with a crime for his role in the incident. The prosecutor made no objection to this testimony. The prosecutor and the judge again indicated, in another sealed ex parte bench conference on September 19, 2005, that they knew Povish had perjured himself in order to conceal his identity. At the

close of the trial, the jury was unable to reach a verdict and, thus, the trial court declared a mistrial.

On December 7, 2005, attorney Warren E. Harris filed an appearance to represent [Aceval] in his retrial, again in Judge Waterstone's court. On March 6, 2006, attorney David L. Moffitt petitioned for leave to file a limited appearance solely for purposes of filing certain motions by [Aceval], which the trial court granted on March 17, 2006. Subsequently, at a hearing on March 28, 2006, [Aceval] indicated that he had become aware that the CI was Povish and argued that the case should be dismissed because of the trial court's and the prosecutor's complicit misconduct in permitting perjured testimony. [Aceval] also requested that both the prosecuting attorney and Judge Waterstone disqualify themselves from the case. Judge Waterstone disqualified herself on the record. The following day, Judge Vera Massey-Jones, the successor judge, entered an order unsealing the three in camera interviews.

\* \* \*

[Aceval's] retrial began on June 1, 2006, with Harris acting as counsel. Before trial, [Aceval] allegedly contacted a prosecution witness and directed him to provide false testimony in support of the defense. After the prosecution discovered this information, it informed the trial court and defense counsel. Subsequently, the witness testified that [Aceval] had asked him to lie and he purged [sic] his testimony. Thereafter, [Aceval] pleaded guilty to the charge of possession with intent to distribute more than 1,000 grams of cocaine.

This Court affirmed Aceval's plea-based conviction. *Id.* at 392-393.[2]

Subsequently, after a series of issues and problems

---

[2] Aceval was tried jointly, before separate juries, with codefendant Pena. Pena's involvement in the narcotics transactions is unclear from the record and the discussion in *Aceval*; however, he eventually pleaded guilty of conspiracy to deliver more than 1,000 grams of a controlled substance.

were resolved related to the proper prosecuting entity for purposes of the case at bar, see *People v Waterstone*, 287 Mich App 368; 789 NW2d 669 (2010), rev'd and remanded to 36th District Court 486 Mich 942 (2010), the AG pursued charges against defendant. The AG had also brought charges against the prosecutor and the two police officers involved in the concealment and perjury alluded to in *Aceval*. The charges brought against defendant were contained in counts 12 through 15 of the AG's complaint, which provided:

### COUNT 12 DEFENDANT(S) (04): COMMON LAW OFFENSES

did commit Misconduct in Office, an indictable offense at common law, by willfully neglecting her judicial duties by permitting or considering an improper ex parte communication on September 8, 2005 and concealing that communication from the defendants in the case of People of the State of Michigan v. Alexander Aceval and/or People of the State of Michigan v. Ricardo Pena; contrary to MCL 750.505. . . .

### COUNT 13 DEFENDANT(S) (04): COMMON LAW OFFENSES

did commit Misconduct in Office, an indictable offense at common law, by willfully neglecting her judicial duties by permitting or considering an improper ex parte communication on September 19, 2005 and concealing that communication from the defendants in the case of People of the State of Michigan v. Alexander Aceval and/or People of the State of Michigan v. Ricardo Pena; contrary to MCL 750.505. . . .

### COUNT 14 DEFENDANT(S) (04): COMMON LAW OFFENSES

did commit Misconduct in Office, an indictable offense at common law, by willfully neglecting her judicial duties by concealing perjured testimony from the defendants in the case of People of the State of Michigan v. Alexander Aceval and/or People of the State of Michigan v. Ricardo Pena by her rulings and orders; contrary to MCL 750.505. . . .

COUNT 15 DEFENDANT(S) (04): COMMON
LAW OFFENSES

did commit Misconduct in Office, an indictable offense at
common law, by willfully neglecting her judicial duties by
allowing perjured testimony [to] be heard by the jury in the
case of People of the State of Michigan v. Alexander Aceval
and/or People of the State of Michigan v. Ricardo Pena;
contrary to MCL 750.505. . . .

The district court bound defendant over on all four
counts of misconduct in office, but the circuit court
quashed counts 12 through 14, while allowing the AG to
go to trial solely on count 15. In Docket No. 303268, the
AG appeals by leave granted the circuit court's order
quashing the first three counts. In Docket No. 303703,
defendant appeals by delayed application for leave to
appeal granted the circuit court's order permitting the
AG to pursue the final count. It is unnecessary for us to
review the reasoning behind the rulings of the district
and the circuit court, given that we are resolving these
consolidated appeals on an issue raised sua sponte by us
at oral argument, which was not addressed nor argued
below. We ordered the parties to submit supplemental
briefs to address, in part, whether MCL 750.478 pre-
cludes the AG's prosecution of defendant under MCL
750.505. Briefs were submitted, and we now proceed to
rule.

II. ANALYSIS

A. STANDARDS OF REVIEW

"This Court reviews for an abuse of discretion both a
district court's decision to bind a defendant over for
trial and a trial court's decision on a motion to quash an
information." *People v Fletcher*, 260 Mich App 531,
551-552; 679 NW2d 127 (2004). A trial court abuses its
discretion when its decision falls outside the range of

reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). A trial court necessarily abuses its discretion when it makes an error of law. *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006). This Court reviews de novo questions of statutory construction. *People v Flick*, 487 Mich 1, 8-9; 790 NW2d 295 (2010).

### B. PRINCIPLES OF STATUTORY INTERPRETATION

In *Flick*, the Michigan Supreme Court recited the well-established principles that govern our interpretation of a statute:

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a "term of art" with a unique legal meaning. [*Id.* at 10-11 (citations and some quotation marks omitted).]

With respect to statutory interpretation of provisions contained within the Penal Code, MCL 750.2 provides:

> The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law.

### C. DISCUSSION

Counts 12 through 15 have one important feature in common; they all charge defendant with "willfully

neglecting her judicial duties." The AG brought the charges pursuant to MCL 750.505, which provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.

"The offense of misconduct in office was an indictable offense at common law." *People v Coutu (On Remand)*, 235 Mich App 695, 705; 599 NW2d 556 (1999). In *People v Perkins*, 468 Mich 448, 456; 662 NW2d 727 (2003), our Supreme Court observed:

> At common law, misconduct in office was defined as "corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." *People v Coutu*, 459 Mich 348, 354; 589 NW2d 458 (1999) . . . , quoting Perkins & Boyce, Criminal Law (3d ed), p 543. An officer could be convicted of misconduct in office (1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance. Perkins, p 540.

The AG has been adamant throughout the proceedings that *all four charges* are predicated on nonfeasance and nonfeasance alone, and the counts themselves are drafted in terms of willful neglect of duty.[3] One of the

---

[3] At first glance, counts 12 and 13 appear to concern acts of misfeasance or malfeasance, where they address ex parte communications permitted or considered by defendant, but the language regarding these communications is directly tied to the concealment of the communications, given that defendant failed to share the communicated information–nonfeasance–with Aceval and Pena. It is the concealment aspect of defendant's actions that drives counts 12 and 13. Had defendant engaged in the ex parte communications and then informed Aceval and Pena about the

questions posed in this appeal, and the only one that need be addressed given our view on the issue, is whether MCL 750.478 precludes a prosecution by the AG against defendant under MCL 750.505. An indictable common-law offense can be charged by the prosecution pursuant to MCL 750.505 unless punishment for that offense is otherwise expressly provided for by statute. It is proper to dismiss a charge brought under MCL 750.505 if the charge " 'sets forth all the elements of [a] statutory offense' . . . ." *People v Thomas*, 438 Mich 448, 453; 475 NW2d 288 (1991) (citation omitted).

In *Thomas*, the defendant was charged, in part, with the common-law felony of obstruction of justice under MCL 750.505 for having prepared a false police incident report. The Court addressed the argument whether the offense should have been dismissed in light of MCL 752.11, which makes it a misdemeanor for a public official to willfully and knowingly fail to uphold or enforce the law with the result that a person's legal rights are denied. *Thomas*, 438 Mich at 453. The Court found that MCL 752.11 concerned omissions of duty, i.e., nonfeasance, and failed to include affirmative acts and commissions, i.e., misfeasance or malfeasance; therefore, because the conduct at issue, falsifying a police report, was an act of commission, it exceeded the strictures of MCL 752.11. *Thomas*, 438 Mich at 454-455. Accordingly, the prosecutor was not prohibited from charging the defendant with common-law obstruction of justice under MCL 750.505. *Id.* at 455.[4]

---

communications, there would have been no basis for a criminal prosecution. Thus, the overall nature of counts 12 and 13 relates to nonfeasance, which is exactly what the AG claims.

[4] We also note the language in *Coutu*, 235 Mich App at 705, wherein the Court stated that the prosecution properly charged the defendants under MCL 750.505 for misconduct in office, "assuming of course that the conduct charged . . . was not more properly charged pursuant to another

MCL 750.478, the statute at issue here, addresses the willful neglect of duty by a public officer and provides as follows:

> When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, *every willful neglect to perform such duty*, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00. [Emphasis added.]

In *People v Bommarito*, 33 Mich App 385; 190 NW2d 359 (1971), the defendant, a former county undersheriff, was charged with four counts of violating MCL 750.478 relative to various failures to enforce the law—nonfeasance. This Court held that "[f]ailure to enforce the law or prevent a violation of which he is cognizant constitutes a breach of this duty," and "[s]uch a breach of duty is a wilful neglect of duty in violation of [MCL 750.478]." *Id.* at 388-389. In *People v Medlyn*, 215 Mich App 338; 544 NW2d 759 (1996), this Court also addressed a prosecution under MCL 750.478, wherein the defendant, a deputy sheriff, was convicted of willful neglect of duty for his failure to report a physical and sexual assault against a prisoner in the county jail after the prisoner had informed the defendant of the assault; the prisoner had been repeatedly beaten and raped on a daily basis after informing the defendant before the prisoner was transferred to a new ward. The focus of

---

statute . . . ." In *People v Davis*, 408 Mich 255, 275; 290 NW2d 366 (1980) (opinion by COLEMAN, C.J.), the Court observed, "[S]ince the Legislature has expressly made a provision for the punishment of an officer who receives a promise or any valuable thing as consideration for delaying an arrest [MCL 750.123], this conduct is not punishable under MCL 750.505 . . . because it is not an offense 'for the punishment of which no provision is expressly made by any statute of this state'."

the appeal regarded the meaning of "willful" neglect, which we shall address in detail hereinafter, with this Court initially noting that there was no dispute that the defendant "had a duty to report any allegations made by inmates to him . . . ." *Id.* at 341. The Court affirmed the defendant's conviction under MCL 750.478. *Id.* at 346.

*Bommarito* and *Medlyn* make it abundantly clear, and it is readily evident from the plain and unambiguous language of the statute, that MCL 750.478 is a statutory provision that makes it a violation of law for a public officer to willfully neglect to perform a legal duty; it squarely concerns omissions of duty. Stated otherwise, MCL 750.478 criminally punishes a public officer for "failing to perform any act that the duties of the office require of the officer, nonfeasance." *Perkins*, 468 Mich at 456. It thus appears that the crime of willful neglect of duty under MCL 750.478 is the same as the crime of misconduct in office under the common law in relationship to a nonfeasance theory of prosecution. Unlike the situation in *Thomas*, 438 Mich 448, where the defendant was charged with committing acts of misfeasance or malfeasance and a statute concerning nonfeasance was examined, defendant here was charged with acts of nonfeasance, or failure to perform a legal duty, and MCL 750.478 encompasses the failure to perform a legal duty, nonfeasance. The AG's case against defendant, prosecuted under MCL 750.505, actually sets forth all the elements of MCL 750.478 because the AG charged defendant with "willfully neglecting her judicial duties."

We next address the elements of corrupt behavior or intent and willful neglect in relationship to MCL 750.505 and MCL 750.478. We find that the misdemeanor statute, MCL 750.478, which punishes the

willful neglect of duty, necessarily encompasses the element of corrupt behavior and that corrupt behavior is also an element of misconduct in office committed through nonfeasance for purposes of MCL 750.505. There is no corrupt-behavior distinction between the two statutes. Even were we to assume that corrupt behavior is an element relative to MCL 750.505 and not MCL 750.478, the misdemeanor statute would control because of the manner in which the AG framed the counts and pursued the prosecution, which was focused simply on willful neglect of judicial duties. In other words, the charges, as presented, fall directly within the parameters of MCL 750.478. More importantly, however, we find that, with respect to misconduct in office under a theory of nonfeasance, corrupt behavior or intent is the equivalent of willful neglect under MCL 750.478.

In discussing misconduct in office as prosecuted under MCL 750.505, this Court in *People v Milton*, 257 Mich App 467, 472; 668 NW2d 387 (2003), noted that the "defendant's misconduct was intentional, i.e., resulted from a corrupt intent . . . ." In *Coutu*, 235 Mich App at 706, after indicating that the word "corruption" means a " 'sense of depravity, perversion or taint,' " and following a dictionary exploration of each of those terms, this Court concluded, pursuant to the definitions, that "a corrupt intent can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer."[5] The Court noted that it is deemed "corrupt" for a public officer to purposely commit a violation of any duties associated with the officer's job

[5] Misconduct in office "does not encompass erroneous acts done by officers in good faith or honest mistakes committed by an officer in the discharge of his duties." *Id.*

or office. *Id.* at 706-707; see also *People v Hardrick*, 258 Mich App 238, 247; 671 NW2d 548 (2003). The *Hardrick* panel found that the "defendant acted with a corrupt purpose when he made deliberate and knowing use of [an] advance copy of [a] test to assist him in taking the sergeant's examination and thereby improperly obtain[ed] a promotion." *Id.*

The cases in the preceding paragraph equated corrupt behavior with intentional, purposeful, deliberate, and knowing wrongful behavior.

In *Medlyn*, 215 Mich App at 345, this Court construed MCL 750.478, and more particularly the words "willful neglect," finding that "[t]he trial court properly instructed the jury that a 'bad purpose' was essential for criminal liability and that the 'bad purpose' element could be met upon a mere showing that defendant failed to do what he was obligated to do." When utilized in a criminal context, the term "willfully" has been variously defined in the caselaw as meaning and embodying evil intent, guilty knowledge, or a bad purpose, and it indicates a purpose and knowledge to do wrong. *People v Greene*, 255 Mich App 426, 442; 661 NW2d 616 (2003); *People v Lockett (On Rehearing)*, 253 Mich App 651, 654; 659 NW2d 681 (2002); *Medlyn*, 215 Mich App at 344-345; *People v Culp*, 108 Mich App 452, 456; 310 NW2d 421 (1981); *People v Lerma*, 66 Mich App 566, 570; 239 NW2d 424 (1976). Of course, "willful" also describes conduct that is intentional, purposeful, voluntary, deliberate, and knowing. *Jennings v Southwood*, 446 Mich 125, 140; 521 NW2d 230 (1994).

On consideration of the authorities cited above, we see no relevant difference between corrupt behavior and willful neglect in the context of nonfeasance in relationship to a legal duty or obligation concerning nondiscretionary or ministerial acts. We find further

support for this proposition in the following passages
from Perkins & Boyce, Criminal Law (3d ed), p 541-542,
546-547, which is a treatise that was cited in *Perkins*,
468 Mich at 456, and *Coutu*, 235 Mich App at 705-706:

> [T]here should be no conviction of [misconduct in offi-
> ce] . . . if the absence of any element of corruption has been
> clearly established, unless the prosecution is under a
> statute substantially different from the common law in this
> respect. . . .
>
>        \*   \*   \*
>
> It is possible, of course, for legislation to go beyond the
> common law and to include within the area of punishability
> certain acts which were not previously criminal. If the
> statute provides that an intentional violation of its provi-
> sions constitutes guilt, no more is required, but this is not
> truly an enlargement of the offense because it is *corrupt* for
> an officer purposely to violate the duties of his office. . . .
>
>        \*   \*   \*
>
> . . . Any intentional and deliberate refusal by an officer
> to do what is unconditionally required of him by the
> obligations of his office is *corrupt* as the word is used in this
> connection because he is not permitted to set up his own
> judgment in opposition to the positive requirement of the
> law. Since this is corrupt misbehavior by an officer in the
> exercise of the duties of his office there is no reason to
> require more for conviction. On the other hand, when the
> officer has discretion in regard to a certain matter, his
> intentional and deliberate refusal to act indicates no more,
> on its face, than that this represents his judgment as to
> what will best serve the public interest. Even in such a case
> the officer will be guilty of misconduct in office if his
> forbearance results from corruption rather than from the
> exercise of official discretion, but it will always be neces-
> sary to show something more than the intentional and
> deliberate forbearance to do a discretionary act.

MCL 750.478 addresses ministerial or nondiscretionary acts, because it speaks of performing duties "enjoined by law." And the charges brought against defendant alleged a failure to perform judicial duties that were nondiscretionary. It is not the AG's position that defendant had discretion in deciding whether to conceal or disclose information. Indeed, the AG states in his supplemental brief that "[f]or non-discretionary acts, as here, the refusal to perform a required duty is corruption per se . . . ."

In *Perkins*, 468 Mich at 456, quoting *People v Coutu*, 459 Mich 348, 354; 589 NW2d 458 (1999), the Court first indicated that misconduct in office, in general, encompassed " 'corrupt behavior,' " but it then proceeded to make the following statement, which has been the bane of the parties' analysis:

> [C]ommitting nonfeasance or acts of malfeasance or misfeasance are not enough to constitute misconduct in office. In the case of malfeasance and misfeasance, the offender also must act with a corrupt intent, i.e., with a "sense of depravity, perversion or taint." In the case of nonfeasance, an offender must willfully neglect to perform the duties of his office. Perkins [& Boyce], p 547. [*Id.* (citations omitted).]

In our view, reading the Supreme Court's words in context, the Court was not intending to indicate that corrupt behavior played no role in regard to nonfeasance, especially given its initial proclamation that misconduct in office "was defined as 'corrupt behavior by an officer'." *Perkins*, 468 Mich at 456, quoting *Coutu*, 459 Mich at 354. Rather, the Court was implicitly equating willful neglect with corrupt behavior. This becomes crystal clear when one looks at the discussion in Perkins & Boyce, p 547, which was the specific citation given by the Supreme Court in

support of its statement that nonfeasance entails a willful neglect to perform the duties of office. *Perkins*, 468 Mich at 456. On pages 547-548 of Perkins & Boyce, the authors state:

> Confusion at this point has led to the occasional suggestion that the mental element required for the crime of misconduct in office is "wilfulness" if the act is one of omission and "corruption" if it is an act of commission [misfeasance or malfeasance]. "Wilfulness," as so used, is intended to mean deliberate forbearance, and to repeat a previous suggestion: what should be said is that the wilful refusal of an officer to perform a ministerial act required by law constitutes *corruption*. [Emphasis added.]

This proposition is entirely consistent with our discussion of the Michigan authorities set forth earlier, and it results in an interpretation of *Perkins*, 468 Mich 448, that is consistent with the mass of cases that include a corruption element with respect to all aspects of misconduct in office, including misconduct by nonfeasance. There is no need to engage in a dicta analysis. Willful neglect of duty and corrupt nonfeasance are effectively one and the same for our purposes. If a public officer willfully neglects to perform a legal duty, he or she engaged in corruption or corrupt behavior.

The dissent argues that the felony statute relative to misconduct in office includes the element of criminal intent, while the misdemeanor statute does not require the prosecution to establish criminal intent. The requisite "intent" for purposes of misconduct in office under MCL 750.505 is the intent to engage in corruption or corrupt behavior; a corrupt intent needs to be proven. *Perkins*, 468 Mich at 456; *Hardrick*, 258 Mich App at 244, 246-247; *Milton*, 257 Mich App at 471-472; *People v Carlin (On Remand)*, 239 Mich App 49, 64; 607 NW2d 733 (1999); *Coutu*, 235 Mich App at 706 (misconduct in office requires "a showing of corrupt intent"). As indi-

cated earlier, corrupt intent "can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer." *Id.* " 'It is *corrupt* for an officer purposely to violate the duties of his office.' " *Id.* at 706-707 (citation omitted). And, with respect to the misdemeanor statute, MCL 750.478, the term "willful" encompasses a knowledge and purpose to commit a wrong ("bad purpose"), *Lockett*, 253 Mich App at 654-655; *Medlyn*, 215 Mich App at 344-345, while committing an intentional act of nonfeasance. Willful neglect of a duty required by law to be performed by an officer, i.e., deliberate forbearance, necessarily entails the intent to intentionally, knowingly, and purposely misbehave and engage in wrongful conduct. This intent is identical to the corrupt intent needed to establish misconduct in office under MCL 750.505; therefore, there is no pertinent distinction between the statutes in regard to the "intent" element.

The dissent complains that our analysis results in an unjustifiable felony-misdemeanor distinction between malfeasance and nonfeasance for behavior that may be equally egregious. First, such an argument bears on a matter of policy with respect to punishment and is thus within the exclusive domain of the Legislature. Second, our Supreme Court in *Thomas*, 438 Mich 448, was more than prepared to make a similar distinction had the alleged conduct actually constituted nonfeasance as governed by the relevant misdemeanor statute.

The AG posits that the validity of a charge brought under MCL 750.505 for misconduct in office predicated on nonfeasance is well established by all the cases and to rule otherwise would conflict with precedent. The gaping hole in this argument is that none of the cases confronted the issue regarding the interplay between

MCL 750.478 and MCL 750.505; the matter has never been addressed in the caselaw.[6]

The AG also argues that mere negligence is sufficient to prove willful neglect under MCL 750.478, thereby distinguishing that misdemeanor nonfeasance offense from a felony nonfeasance offense under MCL 750.505, which requires greater culpability by insisting on proof of corrupt behavior or an intentional failure to perform. The clear language of MCL 750.478 precludes any interpretation suggesting that negligence would suffice. As read in context in MCL 750.478, "neglect" means a failure to perform a legal duty, not negligence. A willful failure to perform does not encompass negligent conduct. One cannot negligently, willfully fail to perform.

---

[6] We note that while MCL 750.478 governs as between it and MCL 750.505 under the charges presented here, there may be an argument that MCL 752.11, which was addressed in Thomas, 438 Mich 448, controls over MCL 750.478. As indicated above, MCL 750.478 addresses willful neglect in the performance of a duty, "where no special provision shall have been made for the punishment of such delinquency . . . ." Clearly, MCL 750.505 is not a "special provision," but rather a broad common-law catchall provision. MCL 752.11, however, provides:

> Any public official, appointed or elected, who is responsible for enforcing or upholding any law of this state and who wilfully and knowingly fails to uphold or enforce the law with the result that any person's legal rights are denied is guilty of a misdemeanor.

There is no need to reach the issue whether any potential misdemeanor prosecution, in whole or in part based on the framing of the charges, would need to be pursued under MCL 752.11 instead of MCL 750.478. Furthermore, assuming that MCL 752.11 is the controlling statute, the same analysis and reasoning that support our finding that MCL 750.478 governs over MCL 750.505 might perhaps support a finding that MCL 752.11 controls over MCL 750.505. See Thomas, 438 Mich 448. Not having surveyed the entire Penal Code in all its vastness, it is conceivable that the AG's charges fit within a yet more narrowly tailored statute. That said, the bottom line is that the instant prosecution, as currently charged, cannot be maintained under MCL 750.505.

Finally, and as somewhat alluded to in footnote 6 of this opinion, we find it extremely important to emphasize that while we conclude that the AG's case against defendant cannot be maintained under MCL 750.505 as currently charged, we are not substantively ruling that there are no legal problems or potential obstacles to the AG pursuing misdemeanor charges under MCL 750.478, should the AG decide to renew charges against defendant. For example, whether the ex parte communications can be the basis for a criminal conviction under MCL 750.478 is not expressly before us, because charges under that statute have not been brought. Similarly, whether a violation of the Code of Judicial Conduct can form the basis for criminal charges is not presently before the Court. But see *Clayton v Willis*, 489 So 2d 813, 815 (Fla App, 1986); *People v La Carrubba*, 46 NY2d 658, 663-664; 416 NYS2d 203; 389 NE2d 799 (1979).

### III. CONCLUSION

We hold that MCL 750.478 constitutes a statute that expressly provides for the punishment of misconduct in office with respect to misconduct that entails willful neglect to perform a legal duty (nonfeasance), which is the type of misconduct set forth in the particular charges brought by the AG against defendant. The elements of the charged offense are the elements of a statutory offense, MCL 750.478. Therefore, under the plain and unambiguous language in MCL 750.505, which is the statute relied on by the AG in regard to the four counts at issue, MCL 750.505 cannot be invoked as a basis to try and convict defendant. Defendant is entitled to dismissal of the charges without prejudice. Accordingly, we affirm the circuit court's ruling quashing counts 12, 13, and 14 of the complaint, albeit for

different reasons; however, we reverse the court's ruling allowing count 15 to proceed to trial.

Affirmed in part, reversed in part, and remanded for entry of an order fully dismissing the charges against defendant without prejudice. We do not retain jurisdiction.

MURRAY, J., concurred with MURPHY, C.J.

TALBOT, J. (*concurring in part and dissenting in part*). I write separately because I believe it unnecessary to remand certain issues to the trial court because of the absence of a legal duty to support the charges and my concern for the potential impact of the issues involved in this appeal on the integrity of the judiciary.

## I. FACTUAL HISTORY/BACKGROUND

While it is unnecessary to repeat the entire history surrounding these consolidated appeals, it is worthwhile to emphasize that it is undisputed that the two police officers, Robert McArthur and Scott Rechtzigel, and the confidential informant (CI), Chad Povish, committed perjury during both a pretrial proceeding and at trial. It is also undisputed that defendant was aware of the perjury and engaged in two ex parte hearings with the assistant prosecuting attorney, Karen Plants.

As noted, the Michigan Attorney General (AG) brought four charges of misconduct in office, comprised of the following:

### COUNT 12 DEFENDANT(S) (04): COMMON LAW OFFENSES

did commit Misconduct in Office, an indictable offense at common law, by willfully neglecting her judicial duties by permitting or considering an improper ex parte communication on September 8, 2005 and concealing that commu-

nication from the defendants in the case of People of the State of Michigan v. Alexander Aceval and/or People of the State of Michigan v. Ricardo Pena; contrary to MCL 750.505. [750.505-C]

FELONY: 5 Years and/or $10,000.00

### COUNT 13 DEFENDANT(S) (04): COMMON LAW OFFENSES

did commit Misconduct in Office, an indictable offense at common law, by willfully neglecting her judicial duties by permitting or considering an improper ex parte communication on September 19, 2005 and concealing that communication from the defendants in the case of People of the State of Michigan v. Alexander Aceval and/or People of the State of Michigan v. Ricardo Pena; contrary to MCL 750.505. [750.505-C]

FELONY: 5 Years and/or $10,000.00

### COUNT 14 DEFENDANT(S) (04): COMMON LAW OFFENSES

did commit Misconduct in Office, an indictable offense at common law, by willfully neglecting her judicial duties by concealing perjured testimony from the defendants in the case of People of the State of Michigan v. Alexander Aceval and/or People of the State of Michigan v. Ricardo Pena by her rulings and orders; contrary to MCL 750.505. [750.505-C]

FELONY: 5 Years and/or $10,000.00

### COUNT 15 DEFENDANT(S) (04): COMMON LAW OFFENSES

did commit Misconduct in Office, an indictable offense at common law, by willfully neglecting her judicial duties by allowing perjured testimony [to] be heard by the jury in the case of People of the State of Michigan v. Alexander Aceval and/or People of the State of Michigan v. Ricardo Pena; contrary to MCL 750.505. [750.505-C]

FELONY: 5 Years and/or $10,000.00

Specifically, the charges arose from the events described as follows:

Counsel for Aceval requested that defendant conduct an in camera interview with McArthur to verify the existence of a confidential informant. On June 17, 2005, defendant conducted the interview in which McArthur and Rechtzigel named Povish as the confidential informant and disclosed the details of the deal provided by the police to Povish for his involvement. As a result of this interview, defendant determined that it was not necessary to reveal Povish's identity as the confidential informant because of concerns regarding his safety. During a September 6, 2005, hearing on Aceval's motion to suppress evidence, Rechtzigel committed perjury by denying any previous contact with Povish. The prosecutor, Plants, did not object to the testimony despite being aware that it was false.

Plants requested an ex parte meeting with defendant on September 8, 2005; that meeting comprises the basis for count 12. Plants requested the meeting because of indications by Aceval's counsel that he was seeking, despite defendant's earlier ruling, to procure cellular telephone records of Povish and another witness in order to ascertain the identity of the confidential informant. Allegedly, Plants initiated the meeting to request that defendant sign an ex parte order that would preclude Aceval's counsel from obtaining the records. During this meeting, Plants also confirmed that Rechtzigel committed perjury when he did not truthfully respond to questions that would have revealed his meeting with Povish at an earlier date and Povish's status as the confidential informant. Defendant agreed that there existed a significant risk to the safety of Povish if his identity as the confidential informant was revealed.[1] A sealed transcript of the

---

[1] The transcript of this meeting is approximately 3½ pages in length. With regard to the acknowledgement of perjury by Rechtzigel, Plants said:

meeting was prepared at defendant's behest.

On September 12, 2005, Povish lied while under oath at trial in response to questions that would reveal his status as the confidential informant. Again, Plants failed to object to the testimony. On September 19, 2005, while the trial was in progress, the second ex parte communication occurred between Plants and defendant, comprising count 13. During this meeting, Plants confirmed that additional incidents of perjury had occurred during the trial by Povish and McArthur, purportedly to protect the identity of the confidential informant.[2] Ultimately, the jury was charged and Pena was convicted, but Aceval was granted a mistrial be-

---

We were doing an evidentiary hearing on Tuesday concerning Mr. Pena and, with Mr. [James] Feinberg's [Aceval's attorney] prompting, Mr. [Steven] Scharg [Pena's attorney] asked the witness, Sergeant Rechtzigel, whether he had met Chad Povish, Brian Hill or the defendant prior to March 11th, 2005. Sergeant Rechtzigel said no. This clearly contradicts earlier testimony he gave about the CI which he had met. He knowingly committed perjury to protect the identification of the CI. To answer yes would have indicated that he had met them in a confidential informant capacity. I did not object at that point because I thought an objection would telegraph who the CI is. I let the perjury happen. He committed perjury knowingly, all in efforts to comply with the Court's order to keep the CI confidential.

[2] The transcript of this meeting is slightly over one page in length. Plants indicated:

With regard to Chad Povish's testimony, he was asked whether he had been offered any sort of deals or immunity. He said no. He obviously was offered a deal because he's the confidential informant. . . . His testimony was 'no' but he did that to conceal his identity. He indicated that he had never seen Mac [McArthur] before that day. Obviously that was to conceal his identity and there was something else. Oh, he doesn't remember what was said to him by Mac. When he was interviewed at the police department there was [sic] discussions about what a good job he had done and so that was not exactly the truth. But again it was done with the intent to conceal his identity. When Officer McArthur testified, he testified that he had no information where the cocaine was going. He was in constant communication with the confidential informant and so

cause of the inability of his jury to reach a decision. Defendant's concealment of the perjured testimony from Aceval and Pena and permitting such testimony to be heard by the jury serve as the underlying factual basis for count 14 and count 15, respectively.

## II. PROCEDURAL HISTORY

I believe it both relevant and useful to review the trial court's decision and reasoning to place into perspective the events that have transpired and the issues raised before this Court.

While the district court bound defendant over on all four counts of misconduct in office, the circuit court quashed counts 12, 13, and 14. Pertaining to these charges, the circuit court ruled, in relevant part:

> In this particular case labeling this particular action and conduct by Judge Waterstone as neglect is a label and is a conclusion drawn, but it is a label and a conclusion drawn by the Attorney General's office.
>
> But in this Court's view this was not neglect of any kind. This was a wilful, intentional, deliberate attempt that quite frankly this Court finds was an ex-parte communication that was not illegal.
>
> A review of the evidence in this particular case indicates that on September 8th and September 19th that ex-parte communications were made with the Court because there was an immediate concern, identifiable concern regarding whether or not a witness on behalf of the prosecution was going to be identified and killed.
>
> To me the notion of the expectation that the Court would invite the defense to participate in that conversation I think is not correct, and I do think that as has been

---

he knew what directions they were going in. Clearly he testified that way to keep the identity secret.

identified here, this is not negligence. This was an intentional, deliberate conduct on the part of Judge Waterstone.

I don't think that there is any other interpretation that can be placed on it. She made a separate record so that her action, her decisions could in fact be reviewed by a later court, and it was done for the specific protection of the life of an informant.

Now to me this is very much analogous to a circumstance where if in fact the police or the investigator or the prosecutor had identifiable, tangible information that during the course of the trial that the defense was attempting to bribe a juror or threatening a juror, one would not expect that that would be an identification made to the Court with the other side knowing about that.

I find that the same is applicable with regard to Count 14, that the conduct of Judge Waterstone was not out of a neglect of her duty, but an intentional conduct which, if anything, would put it into the category of misfeasance rather than any type of nonfeasance.

Misfeasance, as it would apply to Counts 12, 13 and 14 requires a corrupt purpose. There is no evidence to indicate there is any corrupt purpose.

So with regards to Counts 12, 13 and 14, the Motion to Quash is granted with regard to those three counts.

The circuit court allowed the prosecution to proceed against defendant only on count 15, stating, in significant part:

With regards to Count 15, Judge Waterstone is charged with committing misconduct in office by neglecting her judicial duties by allowing perjured testimony to be heard by the jury and not correcting that perjury that came before that jury.

Now one of the issues that has been of some real concern for this Court is to determine exactly how the alleged misconduct is to be categorized.

Now the Attorney General has categorized it as in all four counts as neglecting judicial duties.

That labeling does not necessarily make it so, but there is an allegation, and it is the prosecutor's theory that in Count 15 as with regards to the other counts against Judge Waterstone that it was nonfeasance on the part of the trial judge in the Aceval and Pena case.

The prosecutor cites dicta in the [*People v*] *Perkins* [468 Mich 448; 662 NW2d 727 (2003)] case as to what constitutes nonfeasance and what the elements are.

But the Court in its research has found interestingly enough that with any number of cases where one reads what is a definition or the distinction between misfeasance and nonfeasance, you can get a different definition, different verbiage used for that particular concept.

The Court did find additionally helpful the case of [*Gray v Clerk of Common Pleas Court*, 366 Mich 588; 115 NW2d 411 (1962)].

* * *

And the Supreme Court in the [*Gray*] case harkens back to a case of [*In re Cartwright*, 363 Mich 143; 108 NW2d 865 (1961)], where misfeasance is defined, which it's stated, ["]as a cause for removal from office, is a default in not doing a lawful thing in a proper manner, or omitting to do it as it should be done." [See *Gray*, 366 Mich at 593.]

The Court in [*Gray*] went on to define nonfeasance, and I quote: "nonfeasance is a substantial failure to perform a duty, or, in other words the neglect or refusal, without sufficient excuse, to do that which it was the officer's legal duty to do. Failure to perform the duties of a public office is in and of itself not only nonfeasance but also malfeasance.["] [See *Gray*, 366 Mich at 594.]

Now in this particular case the prosecution has alleged, and the Preliminary Examination established, that there was perjured testimony that was presented during the jury trial, and the trial court did not correct that particular perjury. Did in fact allow that to go forward.

It went forward, and one of the defendants, Mr. Pena, was in fact convicted.

Now this Court finds that that does in fact constitute what would be considered the failure to perform the duties of a public office; that being performing the responsibility of the Court.

This Court does in fact find that with regards to Count 15 that there was no abuse of discretion for the Examining Magistrate to conclude that there was a failure to perform those duties and that it was in effect not error.

Both the AG and defendant appeal the circuit court's decision.

### III. STANDARDS OF REVIEW

"The purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it."[3] The prosecution need not establish guilt beyond a reasonable doubt, but must present "evidence sufficient to make a person of ordinary caution and prudence [] conscientiously entertain a reasonable belief of the defendant's guilt."[4] "Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support the bindover of the defendant if such evidence establishes probable cause."[5] If probable cause exists to believe that a felony was committed and that the defendant committed it, the district court must bind the defendant over for trial.[6]

"This Court reviews for an abuse of discretion both a district court's decision to bind a defendant over for trial and a trial court's decision on a motion to quash an

---

[3] *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003).

[4] *People v Hill*, 269 Mich App 505, 514; 715 NW2d 301 (2006).

[5] *People v Greene*, 255 Mich App 426, 444; 661 NW2d 616 (2003) (citation and quotation marks omitted).

[6] MCL 766.13; MCR 6.110(E); *Hill*, 269 Mich App at 514.

information."[7] An abuse of discretion occurs when the outcome falls outside "the range of reasonable and principled outcomes."[8] This Court reviews de novo a trial court's interpretation of the law related to its decision on a motion to quash the information.[9]

### IV. ANALYSIS

On appeal, the AG and defendant take issue with various aspects of the trial court's rulings and its decision to quash three of the four counts of misconduct in office and in permitting the fourth count to proceed to trial. In essence, the appeals by the AG and defendant distill down to challenges regarding what behavior is encompassed by misconduct in office and the use of the felony statute[10] in charging that offense.

This Court further complicated the appeal when, at oral argument, we requested the parties to address additional points not raised in their appellate pleadings. We posed three questions to counsel for supplemental briefing:

(1) What distinguishes acts of willful neglect of duty under MCL 750.478 from acts of nonfeasance comprising misconduct in office under MCL 750.505?

(2) Does MCL 750.478 codify misconduct in office premised on nonfeasance and preclude the bringing of charges for misconduct in office based on nonfeasance under MCL 750.505? If charges are wrongfully brought pursuant to MCL 750.505, what is the proper remedy?

(3) Can acts comprising willful neglect of duty encompass erroneous acts performed in good faith?

---

[7] *People v Fletcher*, 260 Mich App 531, 551-552; 679 NW2d 127 (2004).

[8] *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

[9] *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010).

[10] MCL 750.505.

Specifically, we sought to determine whether the prosecution properly charged defendant under the *felony* statute governing misconduct in office even though the wording of the various counts was identical to the language in the referenced *misdemeanor* statute.

The felony statute provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.[11]

It is undisputed that "misconduct in office was an indictable offense at common law"[12] and, thus, is included within the statute.[13] Misconduct in office is defined under common law as " 'corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office.' "[14] "An officer could be convicted of misconduct in office (1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance."[15]

In comparison, the misdemeanor statute states:

> When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the

---

[11] MCL 750.505.

[12] *People v Coutu (On Remand)*, 235 Mich App 695, 705; 599 NW2d 556 (1999).

[13] MCL 750.505.

[14] *Coutu*, 235 Mich App at 705, quoting Perkins & Boyce, Criminal Law (3d ed), p 543.

[15] *Perkins*, 468 Mich at 456.

punishment of such delinquency, constitutes a misde-
meanor punishable by imprisonment for not more than 1
year or a fine of not more than $1,000.00.[16]

Our Supreme Court has indicated that "when a 'charge
sets forth all the elements of the statutory offense,' a
conviction under MCL 750.505 . . . cannot be sus-
tained."[17] The statutory provision[18] "does not preclude
prosecution for the common-law offense whenever the
*conduct* at issue is covered by another statute; it pre-
cludes use of the common-law offense when that *offense*
has been codified by the legislature."[19] Specifically,
when evaluating whether an offense is chargeable un-
der the misconduct in office statute or precluded by
another criminal statute, this Court has stated that
"the misconduct in office charge is the 'indictable
offense at the common law, for the punishment of which
no provision is expressly made by any statute of this
state.' *There is no statute that expressly provides pun-
ishment for misconduct in office . . . .*"[20]

The majority has concluded that the misdemeanor
statute[21] "constitutes a statute that expressly provides
for the punishment of misconduct in office with respect
to misconduct that entails willful neglect to perform a
legal duty (nonfeasance)" as charged by the prosecu-
tion. As a result, the majority dismisses without preju-
dice all the counts against defendant because the felony

---

[16] MCL 750.478.

[17] *People v Thomas*, 438 Mich 448, 453; 475 NW2d 288 (1991), quoting
*People v Davis*, 408 Mich 255, 274; 290 NW2d 366 (1980).

[18] MCL 750.505.

[19] Gillespie, Michigan Criminal Law & Procedure (2d ed), Practice
Deskbook (2011 ed), § 5:672, citing *People v Milton*, 257 Mich App 467;
668 NW2d 387 (2003).

[20] *Milton*, 257 Mich App at 472, quoting MCL 750.505 (emphasis
added).

[21] MCL 750.478.

charges premised on misconduct in office are precluded by the existence and applicability of the misdemeanor statute.

The dismissal of all the charges without prejudice prolongs this matter without definitive resolution, a result I believe to be in error and unnecessary. The majority's decision to remand with regard to counts 12, 13, and 14 pertaining to the two ex parte communications and the failure to inform Aceval and Pena of the perjured testimony is not necessary, because it is irrelevant whether these charges are pursued under the felony statute or the misdemeanor statute. Rather, the threshold issue, which is properly before this Court, is whether a legal duty exists that defendant violated. In other words, charges cannot be sustained under either the felony statute or the misdemeanor statute unless defendant has breached or willfully neglected a recognized legal duty.

For purposes of clarity and simplification, I find it most productive to review and analyze the counts individually.

### COUNT 12

In count 12, the AG charged defendant with "misconduct in office" premised on defendant "willfully neglecting her judicial duties by permitting or considering an improper ex parte communication on September 8, 2005 and concealing that communication from the defendants . . . ." The ex parte communication referenced for this count occurred during pretrial proceedings.

In my opinion, the charges associated with this count were properly quashed because no statutory basis exists to preclude defendant—or any judge—from engaging in an ex parte communication. Consequently, defendant's

participation in an ex parte communication cannot comprise the violation of a duty.

In asserting defendant's participation in ex parte communications comprised a violation of duty, the AG relies on and cites provisions within the Code of Judicial Conduct. The Code of Judicial Conduct provides, in relevant part:

> The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:
>
> \* \* \*
>
> A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except as follows:
>
> (a) A judge may allow ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits, provided:
>
> (i) the judge reasonably believes that no party or counsel for a party will gain a procedural or tactical advantage as a result of the ex parte communication, and
>
> (ii) the judge makes provision promptly to notify all other parties and counsel for parties of the substance of the ex parte communication and allows an opportunity to respond.
>
> (b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
>
> (c) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.

(d) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.

(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.[22]

As indicated by the Code of Judicial Conduct, engaging in an ex parte communication is not specifically prohibited. In fact, "an *ex parte* conference to discuss threats against a witness is proper" but requires a court to "insure that the conference is carefully conducted so that no rights of the defendant are threatened."[23] In a similar case in which a prosecutor initiated ex parte communications with a trial court because of concerns regarding the safety of a witness, it was held:

> The . . . court did not abuse its discretion in making the initial decisions to allow the *ex parte* proceedings. In each instance, the court was presented with a plausible argument by the government that providing [the defendant] with the information requested would endanger its witnesses and deter them from testifying. . . . The court clearly benefited from having this information, but providing it simultaneously to [the defendant] would have risked revealing the identities of the witnesses that the government sought to protect. As previously noted, courts have recognized circumstances such as these as justifying an *ex parte* proceeding . . . .[24]

Under the circumstances of this case, I do not construe defendant's "initial decision[] to allow the *ex parte* proceedings" to constitute an abuse of discretion. Further, a judge's decision to participate in the ex parte communication is not subject to criminalization under

---

[22] Code of Judicial Conduct, Canon 3(A)(4).

[23] *United States v Adams*, 785 F2d 917, 920 (CA 11, 1986).

[24] *United States v Napue*, 834 F2d 1311, 1320-1321 (CA 7, 1987).

either statutory provision, even if error is deemed to have occurred in the subsequent handling of the information generated from the meeting.

The Code of Judicial Conduct sets forth parameters and guidelines for a judge's participation in an ex parte communication as a "standard" to be applied, but does not impose a judicial duty. In other words, the code distinguishes between the elements comprising a duty and the standard applied in evaluating the performance of a duty. Pursuant to the language of the code, involvement in an ex parte proceeding does not fall within the definition of misconduct in office, which is "corrupt behavior by an officer *in the exercise of the duties of his office* or while acting under color of his office."[25] Therefore, in the absence of a duty, participation in an ex parte proceeding cannot comprise a public officer's "willful neglect to perform [any] duty" as contemplated by the misdemeanor statute.[26]

The participation of a judge in an ex parte communication is not within the "duties of his office" and cannot, by definition, constitute a "willful neglect to perform" a legal duty. Rather, the strictures pertaining to participation in an ex parte communication are merely guidelines for performance. Any error or failure by defendant (or any judge) to follow the specified standards does not rise to the level necessary to comprise a violation of either the felony statute or the misdemeanor statute. Violation of these standards is,

_____

[25] *Coutu*, 235 Mich App at 705 (emphasis added, citation and quotation marks omitted).

[26] MCL 750.478. As an aside, I would suggest that, when viewed in the context of the language of the misdemeanor statute, defendant's participation in an ex parte proceeding cannot, by definition, be construed as comprising nonfeasance. Participation requires overt action and not a failure to act or the willful neglect of a specific duty, which the trial court recognized to be more properly characterized as misfeasance.

rather, within the purview of the Judicial Tenure Commission (JTC). Specifically, "[t]he Commission's authority is limited to investigating alleged judicial misconduct and, if warranted, recommending the imposition of discipline by the Michigan Supreme Court. Judicial misconduct usually involves conduct in conflict *with the standards* set forth in the Code of Judicial Conduct."[27] Defendant's participation in an ex parte communication was not violative of a duty of her office. Hence, because there was no legal duty, the failure to disclose her participation cannot constitute a willful violation or be construed as comprising misconduct in office.

Specific to count 12 is the fact that the ex parte communication occurred during pretrial proceedings with defendant serving as the fact-finder. Defendant had already made a determination that revealing the identity of the confidential informant was unnecessary. Any information gleaned by defendant from this ex parte proceeding was merely a confirmation of what defendant already knew regarding the identity of the CI and his relationship and/or interactions with the police. The information provided by Plants did not provide defendant with any new extrinsic information or affect her previous ruling regarding the CI's identity. Because defendant was already aware of the information obtained from the prosecutor during this first ex parte communication, Aceval and Pena could demonstrate no prejudice from this communication. Thus, this ex parte communication falls outside the behavior constrained by either statutory provision.

By charging defendant for participating in this ex parte communication, the AG seeks to criminalize what is essentially a discretionary act that is not specifically

---

[27] <http://jtc.courts.mi.gov> (emphasis added).

prohibited by statute or the Code of Judicial Conduct. Further, the possible precedent established by charging defendant for participation in an ex parte proceeding raises serious concerns for all sitting judges. Of particular concern is the potential for the arbitrary and subjective determination by a prosecutor of which ex parte communications comprise indictable offenses. The possibility of the absurd results that could occur is effectively demonstrated in this case wherein defendant is charged with a criminal offense for participating in an ex parte communication that conveyed no new or revelatory information. The majority, by remanding these issues to the trial court, has engaged in an implicit validation of such a procedure and effectively avoided addressing the more pertinent and underlying question whether a duty even exists.

As it pertains to count 12, I would rule that the charge against defendant, under either the felony statute or the misdemeanor statute, for engaging in an ex parte proceeding and the failure to disclose that proceeding to Aceval and Pena, was properly quashed on the basis that defendant's participation in the meeting did not violate a judicial duty.

#### COUNT 13

Similar to count 12, count 13 involves a charge of misconduct in office for defendant's participation in an ex parte communication with the prosecutor on September 19, 2005, during the course of trial. Specifically, the AG charged defendant with "willfully neglecting her judicial duties by permitting or considering an improper ex parte communication . . . and concealing that communication from the defendants . . . ." While distinguishable from count 12 as having occurred during the course of trial rather than pretrial proceedings,

the legal analysis of the sustainability of the charge is
not at variance with that I have outlined for count 12.

Defendant's participation in the ex parte communi-
cation did not constitute the violation of a legal "duty."
Ex parte communications are not subject to blanket
exclusion by the Code of Judicial Conduct and are
permissible under certain circumstances and pursuant
to specific standards. Whether defendant violated those
standards by participating in the ex parte communica-
tion is a matter more properly within the purview of the
JTC rather than subject to enforcement through crimi-
nal statutes. Therefore, for the same reasons discussed
in conjunction with count 12, I would find that the trial
court properly quashed count 13.

### COUNT 14

In count 14, the AG charged defendant with miscon-
duct in office "by willfully neglecting her judicial duties
by concealing perjured testimony from the defen-
dants . . . ." The AG is specifically referring to the
failure of defendant to inform counsel for Aceval and
Pena that perjured testimony occurred during the
course of trial. The AG asserts that this failure to
inform the defendants constituted misconduct in office
through nonfeasance. The AG has not, however, identi-
fied any specific duty on the part of a judge to inform a
defendant of perjured testimony, which is a necessary
prerequisite to sustaining this count under either the
felony or the misdemeanor statute. Again, if the AG
cannot demonstrate the existence of a duty, any allega-
tion regarding breach or willful neglect cannot be
sustained.

Michigan statutory law sets forth the procedure for
judges to follow where perjury has occurred, and pro-
vides:

> Whenever it shall appear to any court of record that any witness or party who has been legally sworn and examined or has made an affidavit in any proceeding in a court of justice, has testified in such a manner as to induce a reasonable presumption that he has been guilty of perjury therein, the court may immediately commit such witness or party, by an order or process for that purpose, or may take a recognizance with sureties, for his appearing to answer to an indictment for perjury; and thereupon the witness to establish such perjury may, if present, be bound over to the proper court, and notice of the proceedings shall forthwith be given to the prosecuting attorney.[28]

Although the statute indicates that the court may immediately indict a suspected perjurer, the statute does not expressly mandate that the court must inform a defendant of the perjury. Ironically, particularly given the circumstances existing in this matter, the judge is to inform the prosecution of the perjury. Having cited only general precepts pertaining to defendant's obligations in accordance with the Code of Judicial Conduct,[29] the AG has failed to sufficiently demonstrate the willful neglect of an official duty by defendant or to meet the requirements necessary to sustain a charge of misconduct in office.

In summary, because I would find that there was no cognizable legal duty breached or violated by defendant as required under either statute for these three counts, I would dismiss these counts with prejudice because it constitutes an unnecessary exercise and waste of judicial resources to remand to the trial court for further proceedings on counts 12, 13, and 14.

---

[28] MCL 750.426.

[29] Canon 2(A) requires judges to avoid "all impropriety and appearance of impropriety." Canon 2(B) mandates judges to "respect and observe the law."

COUNT 15

Because this final charge concerns a trial judge knowingly allowing perjured testimony to be considered by a jury, it is the most troubling count on a variety of levels. In count 15, the AG charged defendant with misconduct in office for "willfully neglecting her judicial duties by allowing perjured testimony [to] be heard by the jury . . . ." Unlike the previous three counts, this charge encompasses a clearly recognized legal duty, because the commission of perjury in court proceedings has long been prohibited.[30] A specific statutory provision addresses the action required of a judge when perjury occurs.[31] In addition, it has long been acknowledged that a criminal conviction obtained through the knowing use of perjured testimony is violative of a defendant's due process rights under the Fourteenth Amendment.[32]

In this Court, defendant argued that the trial court erred by failing to quash count 15 because the felony statutory provision[33] underlying the charge has never been used to indict a judge acting in his or her official capacity.[34] Defendant did not raise the language of the misdemeanor statute. At oral argument, this Court sought clarification from the parties, in seeking to

---

[30] MCL 750.422.

[31] MCL 750.426.

[32] *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959).

[33] MCL 750.505.

[34] Defendant further contended that she should be immune from prosecution for misconduct in office and that her good intention of protecting the CI is dispositive regarding whether the misconduct in office charge can be sustained. Defendant also asserted that the AG's initiation of charges violates the separation of powers because the JTC is responsible for handling all instances pertaining to judicial misconduct.

determine whether the AG properly charged defendant under the felony[35] statute rather than the misdemeanor statute.[36]

As noted previously, the felony statute used to charge defendant provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.[37]

Therefore, the felony statute requires that the offense be indictable at common law and that another statute does not punish that behavior.

Misconduct in office comprised a recognized indictable offense at common law and is defined as " 'corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office.' "[38] An officer can be convicted of misconduct through acts of misfeasance, malfeasance, or nonfeasance.[39] In turn, discussing corrupt behavior in the context of misconduct in office, this Court has stated:

> "Corruption" in this context means a "sense of depravity, perversion or taint." [Perkins & Boyce] at 542. "Depravity" is defined as "the state of being depraved" and "depraved" is defined as "morally corrupt or perverted." *Random House Webster's College Dictionary* (1997). "Perversion" is "the act of perverting," and the term "perverted" includes in its definition "misguided; distorted;

---

[35] MCL 750.505.

[36] MCL 750.478.

[37] MCL 750.505.

[38] *Coutu*, 235 Mich App at 705, quoting Perkins & Boyce, Criminal Law (3d ed), p 543.

[39] *Perkins*, 468 Mich at 456.

misinterpreted" and "turned from what is considered right or true." *Id.* The definition of "taint" includes "a trace of something bad or offensive." *Id.* Pursuant to the definitions, a corrupt intent can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer. See also Perkins & Boyce, supra at 542 ("It is *corrupt* for an officer purposely to violate the duties of his office.").[40]

In contrast, the statutory language comprising the misdemeanor statute states:

> When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00.[41]

The majority has concluded that the misdemeanor statute encompasses the charged behavior and ends its analysis there. As discussed further hereinafter, the two statutes have distinct elements regarding criminal intent. Thus, the misdemeanor statute does not already punish the charged behavior and the felony charge under MCL 750.505 is not precluded. Whether the AG would elect to continue that charge in light of the following analysis remains questionable.

Discerning the elements distinct to each statutory provision is especially important because the AG charged defendant with "willfully neglecting her judicial duties" and adamantly characterized defendant's actions solely as constituting nonfeasance. It must be assumed as an underlying premise that all trial judges,

---

[40] *Coutu*, 235 Mich App at 706-707.

[41] MCL 750.478.

including defendant, are entrusted with the duty to conduct a fair trial and preclude a conviction or judgment that they know involves perjured testimony. This is based, at least in part, on the statutory duty imposed on trial judges to instruct a jury in accordance with the following:

> It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require.[42]

Because both statutes rely on the same duty for trial judges, the distinction between the felony of misconduct in office and the misdemeanor of willful neglect of duty rests on the existence of criminal intent. Discerning this distinction is complicated by the historic confusion of terms, the imprecise use of language, and the misconstruing of terms as being interchangeable. As illustrated, "corrupt behavior" has been equated with criminal intent; however, it is a separate concept both by definition and in statutory application.

The misdemeanor statute requires "willful neglect," but fails to define the term. When a term is not defined within a statute, we assign to the term its plain and ordinary meaning within the context it is used.[43] To ascertain the meaning of a term we may consult dictionary definitions.[44] The term "willful neglect" is defined

---

[42] MCL 768.29.

[43] MCL 8.3a.

[44] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

as the "[i]ntentional or reckless failure to carry out a legal duty . . . ."[45] Similarly, this Court has defined the word "willful" as comprising actions that are " 'voluntarily, consciously, and intentionally' undertaken . . . ."[46] When actions are undertaken " 'voluntarily, consciously, and intentionally,' " they "may be sufficient to constitute 'wilfulness,' even though the actions may have been taken from a 'pure' or 'good faith' motive."[47] In other words, any element of "bad purpose" attributable to willful neglect "could be met upon a mere showing that defendant failed to do what he was obligated to do."[48]

In contrast, the felony statute encompasses "misconduct in office," which has historically been defined as " 'corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office.' "[49] "An officer could be convicted of misconduct in office (1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance."[50] Malfeasance, misfeasance, and nonfeasance are merely the different means or mechanisms to effectuate the corrupt behavior.

Further, misconduct in office "does not encompass erroneous acts done by officers in good faith or honest mistakes committed by an officer in the discharge of his

---

[45] Black's Law Dictionary (9th ed), p 1133.

[46] *People v Medlyn*, 215 Mich App 338, 342; 544 NW2d 759 (1996), quoting *People v Harrell*, 54 Mich App 554, 561; 221 NW2d 411 (1974).

[47] *Id.*

[48] *Medlyn*, 215 Mich App at 345.

[49] *Coutu*, 235 Mich App at 705, quoting Perkins & Boyce, Criminal Law (3d ed), p 543.

[50] *Perkins*, 468 Mich at 456.

duties."[51] This is diametrically opposed to the definition
of actions that are undertaken "willfully," as such
actions "may have been taken from a 'pure' or 'good
faith' motive."[52] Other criminal statutes, that define the
term "wilful," highlight this distinction:

> "Wilful", for the purpose of criminal prosecutions,
> means the intent to do an act knowingly and purposely by
> an individual who, having a free will and choice, either
> intentionally disregards a requirement of this act [the
> Michigan Occupational Safety and Health Act, MCL
> 408.1001 *et seq.*], or a rule or standard promulgated pur-
> suant to this act, or is knowingly and purposely indifferent
> to a requirement of this act, or a rule or standard promul-
> gated pursuant to this act. An omission or failure to act is
> wilful if it is done knowingly and purposely. Wilful does not
> require a showing of moral turpitude, evil purpose, or
> criminal intent provided the individual is shown to have
> acted or to have failed to act knowingly and purposely.[53]

In the context of misconduct in office, "nonfeasance"
is not simply an omission or a failure to act, but rather
is defined as an affirmative act encompassing "willful
neglect" or "deliberate forbearance."[54] Although the
conduct sought to be constrained by either statute
encompasses the willful neglect of duty, the felony
offense of misconduct in office contains an additional
element or requirement. Although willful neglect can
serve to establish corrupt behavior, the common-law
offense of misconduct in office has, historically, also
necessitated the demonstration of criminal intent. Spe-
cifically, this Court has indicated, " 'misconduct in
office is corrupt misbehavior by an officer in the exer-

---

[51] *Coutu*, 235 Mich App at 706.

[52] *Medlyn*, 215 Mich App at 342.

[53] MCL 408.1006(8). See, also, *People v Lanzo Constr Co*, 272 Mich App
470, 475; 726 NW2d 746 (2006).

[54] Perkins & Boyce, Criminal Law (3d ed), pp 547-548.

cise of the duties of his office or while acting under color of his office, *and criminal intent is an essential element of the crime.*' "[55] In contrast, this Court has opined, in analyzing the misdemeanor statute,[56] that the term "willfully" "requires something less than specific intent, but requires a knowing exercise of choice."[57] I glean from the above that the felony statute requires criminal intent, while the misdemeanor statute does not.

Historical developments of the common law further support the existence of such a distinction. As discussed by the United States Supreme Court:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will." Common-law commentators of the Nineteenth Century early pronounced the same principle . . . .
>
> Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took

---

[55] *Coutu*, 235 Mich App at 706, quoting 67 CJS, Officers, § 256, pp 789-790 (emphasis added).

[56] MCL 750.478.

[57] *People v Lockett (On Rehearing)*, 253 Mich App 651, 655; 659 NW2d 681 (2002).

deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law. The unanimity with which they have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental element. However, courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as "felonious intent," "criminal intent," "malice aforethought," "guilty knowledge," "fraudulent intent," "wilfulness," "*scienter*," to denote guilty knowledge, or "*mens rea*," to signify an evil purpose or mental culpability. By use or combination of these various tokens, they have sought to protect those who were not blameworthy in mind from conviction of infamous common-law crimes.[58]

The requirement of criminal intent, as the distinguishing feature between the felony statute and the misdemeanor statute, is logical based on the definition of misconduct in office. To interpret these statutes otherwise would inexplicably reduce the penalty for misconduct in office solely on the basis of the commission of the offense through nonfeasance rather than malfeasance or misfeasance. This would then lead to absurd and inconsistent rulings for behavior deemed equally egregious.

Such a distinction is consistent with the legal concept and definition of "criminal intent" as "[a]n intent to commit an actus reus without any justification, excuse,

---

[58] *Morissette v United States*, 342 US 246, 250-252; 72 S Ct 240; 96 L Ed 288 (1952).

or other defense."[59] In using the term "criminal intent," it has been suggested that "other term[s] such as mens rea or guilty mind should be employed for more general purposes, and 'criminal intent' be restricted to those situations in which there is (1) an intent to do the *actus reus*, and (2) no circumstance of exculpation."[60] This is distinguished from the concept of "general intent," which is defined as "[t]he intent to perform an act even though the actor does not desire the consequences that result."[61] This coincides with the differentiations recognized in Michigan, that "the distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter involve merely the intent to do the physical act."[62] In accordance with prior decisions by this Court:

> "A much more workable definition would center upon the several mental states set forth in the various proposed criminal codes. Analyzed in this fashion, specific intent crimes would be limited only to those crimes which are required to be committed either 'purposefully' or 'knowingly,' while general intent crimes would encompass those crimes which can be committed either 'recklessly' or 'negligently.' Thus, in order to commit a specific intent crime, an offender would have to subjectively desire or know that the prohibited result will occur, whereas in a general intent crime, the prohibited result need only be reasonably expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result."[63]

---

[59] Black's Law Dictionary (9th ed), p 881.

[60] *Id.*, quoting Perkins & Boyce, Criminal Law (3d ed), pp 832-834.

[61] Black's Law Dictionary (9th ed), p 882.

[62] *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983).

[63] *People v Gould*, 225 Mich App 79, 85; 570 NW2d 140 (1997), quoting *People v Lerma*, 66 Mich App 566, 569-570; 239 NW2d 424 (1976).

Hence, the ability of the prosecutor to prove intent in electing to charge defendant under either the felony statute or the misdemeanor statute becomes relevant, which was conceded by the AG during oral argument in this Court.

The AG must submit proofs on defendant's intent, but not necessarily on her motive. As previously discussed by our Supreme Court:

> Although sometimes confused, motive and intent are not·synonymous terms. A motive is an inducement for doing some act; it gives birth to a purpose. The resolve to commit an act constitutes the intent. The motive inducing the resolve, while illuminative of the intent, is necessarily merged therein and is not an essential element in proving commission of crime. The essential element of intent is not at all dependent upon motive. If the intent appears the motive inducing the design may be shown but if not shown the design remains and, as the intent governs, the inducement creating the intent is not essential. A motive is a relevant but not an essential fact in proof of murder. It is true it exists whether disclosed or not. If disclosed it may aid the prosecution, but if not disclosed, or only faintly discernible, its absence or hidden character does not abort the charge if the intent is established. The evidence of motive was meager but what there was of it went to the jury, and properly so, on the question of intent.[64]

Defendant's intent comprises an element of the crime of misconduct in office, which presents an issue for resolution by the trier of fact.[65] To prove misconduct in office, the AG must demonstrate, as threshold requirements, the existence of corrupt behavior and an intent to procure the result obtained, in this instance the convictions of Aceval and Pena. Therefore, if the AG elects to proceed with the charge of misconduct in

---

[64] *People v Kuhn*, 232 Mich 310, 312; 205 NW 188 (1925).

[65] *People v Whittaker*, 187 Mich App 122, 128; 466 NW2d 364 (1991).

office, evidence of defendant's intent comprises a relevant matter to be submitted to the jury for determination to establish the threshold necessary to sustain the charge. This is entirely consistent with prior rulings of this Court that determined, " 'misconduct in office is corrupt misbehavior by an officer in the exercise of the duties of his office . . . and criminal intent is an essential element of the crime.' "[66]

I find that the misdemeanor statute and the felony statute comprise separate and distinct codifications. The willful neglect of duty encompassed by the misdemeanor statute does not include the additional element of criminal intent or specific intent that must be demonstrated to sustain a charge of misconduct in office committed through nonfeasance. In other words, the misdemeanor statute does not constitute a separate codification of the offense of misconduct in office committed through nonfeasance and, therefore, does not preclude the instant charge in count 15 of misconduct in office based on nonfeasance.[67]

I would, therefore, find that the trial court properly allowed count 15 to proceed and correctly quashed counts 12, 13, and 14.

---

[66] *Coutu*, 235 Mich App at 706, quoting 67 CJS, Officers, § 256, pp 789-790.

[67] *Milton*, 257 Mich App at 472.