# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RODERICK LEE WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
October 12, 2017

Nos. 333678, 333679
Washtenaw Circuit Court
LC Nos. 15-000122-FH,
15-000123-FH

---

Before: TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ.

PER CURIAM.

These consolidated appeals stem from defendant's convictions in two separate cases that were joined for a single jury trial. In Docket No. 333678, defendant appeals as of right his convictions for four counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and domestic assault, second offense, MCL 750.81(3).[1] In Docket No. 333679, defendant appeals as of right his conviction for aggravated domestic assault, second offense, MCL 750.81a(3). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 45 months to 15 years' imprisonment for his assaulting, resisting, or obstructing a police officer convictions, 12 months in jail for his domestic violence conviction, and 70 months to 20 years' imprisonment for his aggravated domestic violence conviction. We consolidated these appeals[2] and now affirm.

Defendant first argues that the evidence was insufficient to support his aggravated domestic assault conviction[3] because there was no evidence of a serious or aggravated injury. We disagree. "Challenges to the sufficiency of the evidence are reviewed de novo." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light

---

[1] The most recent amendment to MCL 750.81 took effect on July 25, 2016, after defendant was convicted, and the second-offense provision is now contained in MCL 750.81(4). 2016 PA 87.

[2] *People v Williams*, unpublished order of the Court of Appeals, entered July 15, 2016 (Docket Nos. 333678, 333679).

[3] Defendant does not challenge the sufficiency of the evidence supporting his other convictions.

most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (citation and quotation marks omitted).

The crime of aggravated domestic assault is defined in MCL 750.81a(2), which provides in pertinent part:

> [A]n individual who assaults his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of the same household without a weapon *and inflicts serious or aggravated injury upon that individual* without intending to commit murder or to inflict great bodily harm less than murder is guilty of a misdemeanor . . . . [Emphasis added.]

For purposes of MCL 750.81a, a "serious or aggravated injury" is a "substantial bodily (physical) injury or injury that necessitated immediate medical treatment or caused disfigurement, impairment of health or impairment of any bodily part." *People v Brown*, 97 Mich App 606, 611; 296 NW2d 121 (1980) (citation and quotation marks omitted); see also *People v Norris*, 236 Mich App 411, 415 n 3; 600 NW2d 658 (1999). "[T]he need to seek immediate medical attention is only one factor used in determining whether the element is established." *Brown*, 97 Mich App at 611.

In this case, defendant's aggravated domestic assault conviction arose from a February 15, 2014 physical altercation between defendant and the victim. At that time, defendant and the victim were in a dating relationship and lived together. On February 15, they had an argument that escalated to physical violence. Defendant punched the victim with closed fists more than 10 times over the course of approximately two minutes. Most of the punches landed on the victim's face. The victim was seven months pregnant, and defendant was the father of the unborn child. Nonetheless, defendant kicked or stomped on the front part of the victim's belly with the bottom part of his foot while she was lying on the ground in the fetal position and covering her face with her hands. Both the victim and Officer Stephen Andrews testified about the extent of the victim's visible injuries following the incident, which included a cut on her nose, a bloody nose, bruising under her right eye, black eyes, bruising on her face, bruising on her neck and upper chest, bruising on her thigh, a cut on her left cheek, a cut on her mouth, a popped blood vessel in her eye, scratches on her neck, scratches on her chest, and scratches to her face. Officer Andrews testified that when he arrived at the apartment, the victim had blood pooling in her right eye and had blood "all over her face," underneath her nose, and around her lips. The victim was taken to the hospital by ambulance where she had an ultrasound to check on the welfare of her unborn child. Her various cuts, scratches, and bruises were treated with ointment and ice.

On appeal, defendant only argues that this evidence was insufficient to prove that the victim suffered a serious or aggravated injury. This Court has previously held that evidence that a victim "suffered cuts on his face, an eye injury, and a bruised neck" was sufficient to support the conclusion that the defendant had inflicted a serious or aggravated injury for purposes of MCL 750.81a, even though the victim did not seek medical attention until the next evening. *Brown*, 97 Mich App at 609, 611. Here, the victim's injuries to her face and chest consisted of significant bruises, cuts, and scrapes, as well as a popped blood vessel in her eye. The victim

was taken to the hospital the night of the assault and was told to treat the injuries with ointment and ice; she also underwent an ultrasound, which revealed no harm to the fetus or complications with the victim's pregnancy. Thus, although it is not determinative, the victim clearly sought immediate medical attention, which is one factor in establishing a serious or aggravated injury. See *id*. at 611. Further, contrary to defendant's assertion on appeal, the statute does not require that the injury or impairment be permanent, and defendant has not cited any authority for that proposition. Accordingly, viewing the evidence in the light most favorable to the prosecution, a rational jury could conclude beyond a reasonable doubt that the victim suffered a serious or aggravated injury. See *Smith-Anthony*, 494 Mich at 676; *Brown* 97 Mich App at 611.

Next, defendant argues that the prosecutor committed two instances of misconduct during closing argument. We disagree. Defendant failed to preserve his prosecutorial misconduct claims by objecting to the prosecutor's challenged remarks at trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). An unpreserved challenge to a prosecutor's conduct at trial is reviewed for plain error affecting substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). If a curative instruction could have alleviated any prejudicial effect, then there is no error requiring reversal. *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003) (citation and quotation marks omitted). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," and "[t]hey are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

Defendant first argues that the prosecutor committed misconduct during closing argument by misstating the law regarding the elements of aggravated domestic assault. Specifically, defendant argues that the prosecutor incorrectly told the jury that he did not have to prove an actual injury for defendant to be found guilty of aggravated domestic assault. For context, see *Akins*, 259 Mich App at 562, the relevant portion of the prosecutor's closing was as follows:

> Now, regarding that incident, the Judge is going to read you some instructions. She's going to tell you what the law is. And she's going to tell you what the law is that you have to follow.
>
> She's going to tell you that for aggravated domestic assault, I have to prove beyond a reasonable doubt that the defendant tried to physically injure another person. . . .
>
> Second, that he intended to injure [the victim] or intended to make [the victim] reasonably fear an immediate battery. . . .

Now, third, that the assault caused a serious or aggravated injury. And I want you to pay close attention to the definition, 'cause the Judge is going to give you a copy of these instructions; you'll have—each of you will have a copy, and you'll be able to look right at it. And you can see what the elements are.

A serious or aggravated injury is a physical injury that requires immediate medical treatment or that causes disfigurement, impairment or [sic] health, or impairment of part of the body.

Was this a physical injury that required immediate medical treatment? Absolutely. She testified to you to the pain that she felt, that it hurt. And when you stomp on a pregnant woman's belly hard, as she put it, that requires immediate medical treatment.

She went to the hospital. She stayed there overnight. It required medical treatment to check out the injuries, to check out the baby, to determine if—if she could even have the baby, if the baby was alive.

Now luckily in this case, they did an ultrasound and the baby was okay. There were no apparent injuries. *And I don't have to prove that there were any actual injuries.* I just have to prove that the physical injury of getting kicked, not only did it—I don't have to prove that it caused injuries to the baby, or that she required surgery, or anything; but that that physical injury, that pain from getting kicked in the stomach required medical treatment. And that's exactly what it required. It required her to go to the hospital. She was taken there by [ambulance] to get checked out, to have her baby checked, to get that ultrasound. [Emphasis added.]

"A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *Id.* As previously stated, the offense of aggravated domestic assault requires the prosecution to prove that there was a serious or aggravated injury, MCL 750.81a(2), which is defined as a "substantial bodily (physical) injury or injury that necessitated immediate medical treatment or caused disfigurement, impairment of health or impairment of any bodily part," *Brown*, 97 Mich App at 611 (citation and quotation marks omitted). Thus, the prosecutor's statement, "I don't have to prove that there were any actual injuries," if considered in isolation, was an incorrect statement of the law.

However, considering the remark in context, *Akins*, 259 Mich App at 562, it is clear from examining the prosecutor's statements preceding the challenged statement that the prosecutor told the jury that he needed to prove that defendant had inflicted "a serious or aggravated injury" and correctly defined that term. It is also apparent that the prosecutor realized that he had misspoken by saying that he did not have to prove an actual injury and attempted to clarify that he only meant that he did not have to show that the ultrasound revealed harm to the fetus or that the victim's injuries were so severe that they required surgery. Therefore, any misstatement of

-4-

the law by the prosecutor did not go uncorrected and did not deny defendant a fair trial. See *Grayer*, 252 Mich App at 357.

Moreover, the trial court properly instructed the jury during final instructions that to prove the charge of aggravated domestic assault, the prosecutor was required to prove "that the assault caused a serious or aggravated injury" and that "[a] 'serious or aggravated injury' is a physical injury that requires immediate medical treatment or that causes disfigurement, impairment of health, or impairment of a part of the body." See MCL 750.81a(2); *Brown*, 97 Mich App at 611. The trial court also instructed the jury that it was the trial court's duty to provide instructions on the law and that "[i]f a lawyer says something different about the law, follow what I say." Therefore, any error in the prosecutor's explanation of the law was cured by the trial court's proper jury instructions. *Grayer*, 252 Mich App at 357. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (internal citation omitted). Accordingly, defendant has failed to demonstrate error requiring reversal based on the prosecutor's isolated misstatement of the law.

Defendant also argues that the prosecutor committed misconduct during closing argument by attacking defendant's character. Specifically, defendant challenges the prosecutor's following statement:

> This is a case that we'll start with February 15, 2014. Let's start with [the victim]. She was at her house at 3001 Woodland Hills Drive, apartment number 33, in Pittsfield township. She was with a man that she was living with. She was 19 years old. The man that she was living with was 37-year-old [defendant].
>
> *She was with a man that was abusive, violent, uncaring, unremorseful, and a man who was a liar.* [Emphasis added.]

The prosecutor subsequently made the following statements as part of his argument regarding the February 15, 2014 incident:

> Now, defendant took the stand and he testified that he didn't hit her on the day, and that these injuries occurred from her falling into a plastic tree.
>
> Now, Ladies and Gentlemen, I'm going to ask that you use your common sense and knowledge. All these exhibits, all the audio, everything that you've seen in this trial that's been admitted, you can ask for it when you're in the deliberation room. You can watch this video as many times as you want. Listen to every word. Stare at these pictures, look through all of them, and look at these injuries. Are these consistent, using your common sense, to somebody just falling into a plastic plant? Or are these consistent with this man using his fists and pounding on her and beating [the victim].
>
> Now, he said it didn't happen when he took the stand. He's clearly lying to you, because if you listen to the 911 call, she clearly makes that call afterward. There's no time for her to make up this story. There's no other reason for her to be as upset and telling the 911 call what—operator what happened, telling you

what happened, telling the police what happened. And who has the motive to lie but [defendant]. And he can't even stick to his—the same lie.

In their opening statement they tell you, yes, there was a domestic-violence incident; yes, she was injured, but it wasn't aggravated. You heard that yesterday during opening statement. And today he comes up with the story, Oh, she fell into a tree; he didn't touch her.

"A prosecutor may not intentionally inject inflammatory arguments with no apparent justification except to arouse prejudice." *People v Lee*, 212 Mich App 228, 247; 537 NW2d 233 (1995). Further, "prosecutors should not . . . express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). However, "[a] prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief and is not required to state inferences and conclusions in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (internal citation omitted). Moreover, it is permissible to refer to a defendant as a "liar" when the testimony and evidence produced at trial support such a characterization. See *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997) (concluding that a prosecutor's statements during closing argument that characterized defendant as a "liar" were not improper where this Court found that "the challenged remarks regarding defendant were made in reference to the testimony and evidence presented at trial" and that "[t]he prosecutor was advancing his position that various claims made by defendant were not credible in light of contradictory evidence adduced at trial").

Here, the evidence of defendant's assaultive conduct supported the conclusion that he was violent and abusive. Further, there was evidence that the victim suffered significant injuries that included a popped blood vessel in her eye and significant bruises, cuts, and scrapes on her face and chest. The prosecutor argued that these injuries were inconsistent with defendant's claim during his testimony that the victim fell into a plastic tree in the residence. It was permissible for the prosecutor to note these inconsistencies and argue that the evidence showed that defendant was not worthy of belief. See *Launsburry*, 217 Mich App at 361. Therefore, defendant has failed to demonstrate error requiring reversal on this ground. *Ackerman*, 257 Mich App at 448-449.

Defendant argues in the alternative that defense counsel's failure to object to the prosecutor's alleged misconduct constituted ineffective assistance of counsel. However, as just discussed, there were no meritorious grounds on which defense counsel could have based an objection. Therefore, defendant failed to establish that defense counsel was ineffective. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) ("Counsel is not ineffective for failing to make a futile objection.").

Finally, defendant argues that the trial court abused its discretion by joining the two cases into a single trial. We disagree. "[T]he ultimate decision on permissive joinder of related charges lies firmly within the discretion of trial courts." *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014) (citation and quotation marks omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). "To determine

whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). "This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo." *Gaines*, 306 Mich App at 304. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011) (citation and quotation marks omitted).

MCR 6.120(B), which governs the joinder of offenses in multiple informations involving a single defendant, provides in pertinent part as follows:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

In *Williams*, 483 Mich at 233, the Michigan Supreme Court explained that "[t]he plain language of MCR 6.120 permits joinder if offenses are 'related,' " and that "[o]ffenses are 'related' if they comprise either 'the same conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.' " The defendant in *Williams* was discovered on two separate occasions at different locations with cocaine and drug paraphernalia. *Id*. at 228-229. The trial court granted the prosecutor's motion to join the trials for the charges stemming from the two incidents into a single trial. *Id*. at 229-230. The *Williams* Court held that the trial court did not err by determining that joinder was appropriate because the charged offenses were "plainly 'related' " since the defendant in both cases "was engaged in a scheme to break down cocaine and package it for distribution" and "[e]vidence of acts constituting part of [the] defendant's single scheme was found in both" locations. *Id*. at 234, 249-250. The *Williams* Court further reasoned that "[e]ven if one views [the] defendant's first arrest . . . and his second arrest [at a later date] as discrete moments in time, direct evidence indicated that he was engaging in the same particular conduct on those dates." *Id*. at 234-235.

Here, during the February 15, 2014 incident, defendant had been drinking, and he got into an argument with the victim that escalated into a violent physical altercation. Defendant pushed the victim, hit her more than 10 times with closed fists, and stomped on her belly even though she was pregnant with his child. Defendant caused significant injuries and told the victim that he needed to leave the apartment so that he did not kill her. During the January 15, 2015 incident, defendant had again been drinking, and he again got into an argument with the victim that became physical. Defendant started screaming loudly at her and pointing in her face. At some point, he pushed her, grabbed and pulled her hair, and was yelling in her face. The victim locked herself in the bathroom along with their eight-month-old son and called the police. While the victim and the child were locked in the bathroom, defendant had a confrontation with the police that involved obscene language, threats to shoot the officers, physical confrontations, and obscene gestures. At some point during these events, the victim called the police again because she was scared and defendant was banging on the bathroom door. She was afraid to come out of the bathroom without the police in the apartment. Both incidents occurred at the apartment where defendant and the victim lived together. It was not outside the range of reasonable and principled outcomes for the trial court to determine that these two incidents were a series of acts constituting parts of a single scheme or plan to exercise power and control over the victim while defendant was intoxicated. *Waterstone*, 296 Mich App at 131-132; *Williams*, 483 Mich at 249-250.

Moreover, as the trial court also concluded, a single trial was more convenient for the victim and other police witnesses who would testify in both cases. A single trial would also conserve the resources of the parties and the court, and there was little potential that the jurors would confuse the evidence related to the domestic assaults of the victim with the evidence related to resisting and obstructing the police officers. Thus, the additional factors provided in MCR 6.120(B)(2) also favored joinder, and the trial court did not abuse its discretion by granting the prosecution's motion to join the cases in a single trial. *Gaines*, 306 Mich App at 304.

Additionally, "[t]he admissibility of evidence in other trials is an important consideration because [j]oinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *Williams*, 483 Mich at 237 (citation and quotation marks omitted; second and third alterations in the original). Here, defendant essentially argues that his conviction for aggravated domestic assault based on the 2014 incident was the result of unfair prejudice because of the admission of evidence relating to the 2015 incident. However, the prosecution, alongside its joinder motion, moved the trial court to admit evidence of the two incidents in each respective case as other-acts evidence pursuant to MRE 404(b) and MCL 768.27b.

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Our Supreme Court has stated that MCL 768.27b "in certain instances expands the admissibility of domestic-violence other-acts evidence beyond the scope permitted by MRE 404(b)(1)." *People v Mack*, 493 Mich 1, 2; 825 NW2d 541 (2012). MCL 768.27b provides in pertinent part:

>       (1) . . . in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.
>
> * * *
>
>       (5) As used in this section:
>
>       (a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:
>
>       (*i*) Causing or attempting to cause physical or mental harm to a family or household member.
>
>       (*ii*) Placing a family or household member in fear of physical or mental harm.
>
> * * *
>
>       (*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

This Court has also stated that MCL 768.27b "allows trial courts to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007). MRE 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "[A]dmission of [e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citation and quotation marks omitted; second, third, and fourth alterations in the original). When evidence is admitted pursuant to MCL 768.27b, the fact that the evidence shows the defendant's propensity to commit the charged offense may be considered when evaluating the probative value of the evidence. See *id*. at 612.

     Here, the January 15, 2015 incident clearly involved other acts of domestic violence as defined by MCL 768.27b. The victim testified that defendant yelled in her face, pushed her, and pulled her hair. She then called the police after locking herself in the bathroom with her eight-month-old son, and she testified that she was afraid. Defendant's actions satisfy the statute's definition of domestic violence because defendant caused or attempted to cause physical or

-9-

mental harm to the victim, placed the victim in fear of physical or mental harm, and engaged in activity that would make a reasonable person feel terrorized, frightened, intimidated, threatened, or harassed. MCL 768.27b(5)(a)(*i*), (*ii*), and (*iv*). Further, the evidence of defendant's interactions with the police, while directly related to his resisting or obstructing offenses, also constituted further acts of domestic violence for purposes of MCL 768.27b because the victim remained locked in the bathroom and was afraid to come out while defendant screamed obscenities and threats at the police, banged on doors, and was physically violent towards the police. These acts continued to place the victim in fear of physical or mental harm and would cause a reasonable person to feel terrorized or frightened. MCL 768.27b(5)(a)(*ii*), and (*iv*). This evidence was highly probative of defendant's violent character and his propensity to engage in extremely violent, assaultive behavior, specifically assaultive behavior toward the victim, his girlfriend. This is a proper purpose under MCL 768.27b. *Cameron*, 291 Mich App at 612. The evidence also was not *unfairly* prejudicial because, although the evidence showed that defendant used vulgar language and made sexually obscene gestures, this did not present a risk that the jury would convict based on an improper purpose, i.e. something unrelated to defendant's violent act toward the victim such as the bias, sympathy, anger, or shock of the jury. See *id*. at 611. "[T]he prosecution does not have to use the least prejudicial evidence to make out its case." *Id*.

Consequently, evidence regarding the January 15, 2015 incident would have been admissible at a trial for defendant's aggravated domestic assault, had it been tried separately, under MCL 768.27b(1), and defendant was not prejudiced by the joinder of his two cases. See *Williams*, 483 Mich at 237. Defendant's argument to the contrary fails to acknowledge the application of MCL 768.27b to the instant case. Additionally, defendant's reliance on *People v Daughenbaugh*, 193 Mich App 506, 508, 510, 511; 484 NW2d 690 (1992), mod in part and lv den in part 441 Mich 867 (1992), is misplaced because our Supreme Court has determined that the analysis in that case is inconsistent with the plain language of MCR 6.120. *Williams*, 483 Mich at 238-239 ("Consistent with our decision, we also reject the analysis of *Daughenbaugh* in accordance with the plain language of MCR 6.120.").

Affirmed.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Colleen A. O'Brien