# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ALFONZO GORDON POLLARD,

      Defendant-Appellant.

UNPUBLISHED
July 19, 2018

No. 338225
Ingham Circuit Court
LC No. 15-001059-FC

---

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals his convictions following a jury trial of six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), and one count of distributing sexually explicit material to a minor, MCL 722.675(1)(a). Defendant was sentenced to prison terms of 25 to 55 years for each CSC-I conviction, 8 to 15 years for the CSC-II conviction, and 14 months to 2 years for the conviction of distributing sexually explicit material to a minor, to be served concurrently. For the reasons set forth below, we affirm defendant's convictions, vacate his sentence for counts 2, 3, and 5, and remand for resentencing on those counts.

## I. FACTS

Defendant was charged with various crimes involving sexual abuse of his biological granddaughters, ID and SW, who began living with defendant and their biological grandmother, Faith Davis, around 2005. According to ID, defendant began to sexually abuse her when she was 10 years old, beginning with the use of vibrators to penetrate her vagina, and escalating to digital penetration when she was 12 years old. When ID started dating her first boyfriend, when she was 14 years old, defendant offered her a deal whereby he would transport her to her boyfriend's house to visit if she would first allow him to perform oral sex on her for 20 minutes before each visit. The "deal" subsequently also involved sexual intercourse and digital penetration with a vibrator or dildo, and required ID to engage in the acts before she would be allowed to visit her boyfriend. ID testified that the sexual acts occurred in defendant's basement, studio room, and on a couch in the back of his van, and that "this happened more than 10 times."

SW, who is two years younger than ID, testified that she was 10 or 11 years old when defendant told her that if she wanted something from the store, she would have to "give him something in return." Around that time, defendant began sexually abusing SW. On three or four

occasions between then and when she turned 13 years old, SW fell asleep in the basement room and woke up to defendant touching her body. The first time this happened, she saw and felt defendant's fingers inside of her vagina. On another occasion, SW woke up and defendant had moved her pajamas down and to the side, and he was touching his tongue to her vagina. SW felt uncomfortable with the touching, but defendant told her that "it's not wrong" and "it's okay . . . for that type of relations to happen."

Defendant showed ID and SW a "Family Tales" book that was about "other families and incest." According to SW, the book portrayed incest as a "good thing." SW also testified that she observed pictures of ID unclothed on defendant's computer. She recognized the background of those pictures as the main floor bathroom where they would shower. SW then looked in the bathroom and found a hidden camera on a hook in the wall. She and her cousin removed the camera, and defendant subsequently came into the bathroom and took the camera from them. Both victims testified that they did not disclose the abuse to anyone other than a friend because they feared that they would be taken into foster care and separated from each other and their brother.

As ID became older, she and defendant had numerous verbal altercations. In October 2015, defendant accused ID of having sex with her boyfriend after he discovered what he believed to be seminal fluid on her underwear while he was doing laundry. After the two argued and ID stopped answering defendant's questions, defendant told her that she was being disrespectful and punched her in the leg twice and in the upper chest once. He picked up a small baseball bat and told ID that if she did not start answering his questions, "I will kill you right now." Defendant approached ID with his arm extended and holding the bat, and ID then agreed to answer his questions.

The next day, ID met with the medical social worker at her school and disclosed that she was afraid to go home for fear of abuse by her grandfather. ID told the social worker that she had been sexually abused by defendant for six or seven years. ID and SW, as well as their brother, were forensically interviewed the same day and, following the interviews, a search warrant was obtained for defendant's residence. During the search, officers seized several items from the basement room, including a mini baseball bat, several vibrators, the Family Tales book, pornographic pictures, magazines, and movies, and pornographic videotapes. They also seized a "massage vibrator" from a container in a drawer in the dining room, two computers from inside the house, and the cushions from a couch in the back of defendant's van.

A forensic analysis of defendant's computer revealed approximately 30 thumbnail pictures of ID in various stages of undress. The background in each picture was the main floor bathroom of defendant's home. ID's breasts, buttocks, and genital area were exposed in the pictures, with some of the pictures depicting close-up views of her breasts and genitals. The analysis also revealed two videos. One included ID in defendant's van wearing a skirt or very short shorts, and one included ID sitting on the toilet with her pants pulled down, as well as ID fully undressed before and after taking a shower. DNA analysis of items sent to the Michigan State Police Crime lab revealed the presence of Faith's DNA on the head of the massage vibrator. Defendant's and ID's DNA were present on the shaft and handle of the pink vibrator.

## II. ANALYSIS

## A. OTHER-ACTS EVIDENCE UNDER MCL 768.27A

On appeal, defendant challenges the admission of other acts evidence showing that Faith is his biological niece, and that he began an incestuous relationship with Faith while she was a minor.[1] Defendant does not challenge the admissibility of the other-acts evidence under MCL 768.27a, but argues that the evidence should have been excluded under MRE 403. Specifically, defendant argues that his acts with Faith when she was a minor were not similar to the acts involving ID and SW, and that admission of the incestuous nature of his relationship with Faith was overly prejudicial. We disagree.[2]

In a criminal case in which the defendant is accused of committing CSC I against a minor, the prosecutor can, "under MCL 768.27a, offer evidence of another sexual offense committed by the defendant against a minor without having to justify its admission under MRE 404(b)." *People v Solloway*, 316 Mich App 174, 192; 891 NW2d 255 (2016). "Under MCL 768.27a, evidence is relevant, and therefore admissible, when offered to show the defendant's propensity to commit the charged crime." *Id.* at 193. However, "[r]elevant evidence that is admissible under MCL 768.27a may still be excluded under MRE 403." *Id.* at 193. Although MCL 768.27a is subject to MRE 403,[3] "when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012).

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id.* at 487–488.]

Weighing the *Watkins* factors, we conclude that the trial court did not abuse its discretion in finding that Faith's testimony was not overly prejudicial. The circumstances surrounding the

---

[1] There is no dispute that Faith's mother is defendant's half-sister and that defendant had a sexual relationship with Faith that commenced when she was younger than 18 years old. Defendant and Faith have three children together, including the mother of the victims in this case.

[2] We review the trial court's decision to admit other-acts evidence for an abuse of discretion. *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2007). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012).

[3] MRE 403 provides, in part, that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

acts against Faith were substantially similar to the charged offenses involving ID and SW in that both involved defendant's incestuous activity with a minor female while living in the same household. Although the other acts involving Faith when she was a minor occurred nearly 40 years earlier, this factor alone is not dispositive. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Faith's testimony was highly probative of defendant's propensity to sexually touch young female family members in the household. As noted in *Watkins*, in the context of MCL 768.27a, the propensity inference weighs "in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich. at 487.

Further, "[i]n cases in which a trial court determines that MRE 403 does not prevent the admission of other-acts evidence under MCL 768.27a, [a standard jury] instruction is available to ensure that the jury properly employs that evidence." *Id*. at 490. Here, the trial court provided a jury instruction regarding the evidence. A limiting instruction lessens the potential for prejudice because "jurors are presumed to follow their instructions." *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53 (2010). In sum, admitting Faith's other-acts testimony was within the range of principled outcomes. *Waterstone*, 296 Mich App at 131.

## B. SENTENCING

Defendant next argues that the trial court erred by assessing 50 points for offense variable (OV) 11. To preserve a challenge to a defendant's OV score, the defendant must raise "the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed" with this Court. MCL 769.34(10). Although defendant did not object to the scoring of OV 11 during sentencing, he preserved his challenge to the scoring of OV 11 by filing a motion to remand with this Court.

MCL 777.41 provides:

(1) Offense variable 11 is criminal sexual penetration. Score offense variable 11 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Two or more criminal sexual penetrations occurred . . . . . . . 50 points

(b) One criminal sexual penetration occurred . . . . . . . . . . . . . . 25 points

(c) No criminal sexual penetration occurred . . . . . . . . . . . . . . . . . 0 points

(2) All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender *arising out of the sentencing offense*.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense. [Emphasis added.]

-4-

Vaginal penetration, fellatio, and cunnilingus are considered separate sexual penetrations when scoring OV 11 under MCL 777.41. See *People v Wilkens*, 267 Mich App 728, 743; 705 NW2d 728 (2005). The court must consider all sexual penetrations of the victim arising out of the sentencing offense pursuant to MCL 777.41(2)(a). MCL 777.41(a); *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).[4] However, no points are assessed for the one penetration that is the basis for a first- or third-degree CSC offense. MCL 777.41(2)(c); *Johnson*, 298 Mich App at 131. In *Johnson*, we affirmed scoring on OV 11 where there was evidence that during the assaults for which he defendant was charged, he committed two additional penetrations. *Johnson*, 298 Mich App at 132.

Defendant was convicted of six counts of first-degree criminal sexual conduct. The instructions for OV 11 provides that "[t]he one penetration that forms the basis of a first or third-degree criminal sexual conduct convictions must not be counted for purposes of scoring OV 11." MCL 777.42(2)(c). ID testified to a series of sexual penetrations that began with digital/vaginal penetration when she was 12 years old and progressed to oral/vaginal penetration, penis/vaginal penetration, and vaginal/object penetration when she was 14 years old. Significant to the scoring of OV 11, ID testified that she was 12 years old when defendant penetrated her vagina with his thumb "[at] least three times" on the same date in order to determine whether she was a virgin. She also testified that in later assaults, defendant would sometimes commit multiple penetrations.

ID's testimony that defendant digitally penetrated her approximately three times on the same day while attempting to determine whether she was a virgin is sufficient to support a finding that two or more penetrations occurred in addition to the sentencing offense. See *People v Mutchie*, 251 Mich App 273, 277; 650 NW2d 733 (2002) (the sexual penetrations "occurred at the same place, under the same set of circumstances, and during the same source of conduct" such that all of the sexual penetrations would fall within the scope of "sexual penetrations of the victim arising out of the sentencing offense").

Accordingly, we conclude that OV 11 was properly scored.

---

[4] In *Johnson*, the defendant was charged with and convicted of three counts of first-degree criminal sexual conduct involving vaginal penetration, fellatio, and cunnilingus with the victim, who testified with respect to multiple instances of sexual penetration beginning when she was 13 and over the course of three years. *Johnson*, 298 Mich App at 132. This Court noted that the victim's statements in the presentence investigation report indicated that she and the defendant engaged in vaginal-penile intercourse almost every time they were together and that they also performed fellatio and cunnilingus during these encounters. *Id*. This Court held that OV 11 was properly scored because "the record evidence establishes that two sexual penetrations arose out of the penetrations forming the basis of the sentencing offenses." *Id*.

Defendant also argues that the trial court failed to articulate any reason for imposing a departure sentence for the CSC I convictions in counts 2, 3, and 5, that were not subject to a mandatory minimum sentence of 25 years under MCL 750.520b(2)(b). We agree.[5]

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). The "key test" is whether the imposed sentence is "proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017) (quotation marks and citation omitted). The trial court must take into account the guidelines and consider them in the exercise of its sentencing discretion. *Id*. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Lockridge*, 498 Mich at 391-392.

The record supports defendant's argument that the trial court did not articulate any reason for imposing a departure sentence for CSC I convictions in counts 2, 3, and 5. Defendant's guidelines for those counts were scored at 135 to 225 months, but the trial court imposed a minimum sentence of 300 months for each of the counts, a 75-month upward departure from the guidelines range. In *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017) we stated:

> An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality. See *Milbourn*,[6] 435 Mich at 659-660 (recognizing that "[e]ven where some departure appears to be proportionate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality.") Therefore, even in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender. See *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008) ("When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been.").

Here, the trial court did not articulate why the departure sentence was more proportionate than a sentence within the recommended sentencing guidelines. "[I]t is necessary for a trial court to articulate reasons for imposing a departure sentence to permit appellate review of whether the court abided by the principle of proportionality." *Steanhouse* (*On Remand*), 322 Mich App at 243 (citation omitted). By failing to articulate any reason for departing from the guidelines, the

---

[5] We review for an abuse of discretion a trial court's departure sentence. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

[6] *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

trial court abused its discretion and resentencing is required. *Id*. The fact that defendant was sentenced to 25-year mandatory minimum on other charges is not grounds for departure.

Accordingly, we affirm defendant's convictions, vacate his sentence for counts 2, 3, and 5, and remand for resentencing on counts 2, 3, and 5. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola